# Philips *versus* Bank of Lewistown.

1. The assignment of a mortgage is the subject of record under the second section of the recording act of 28th May, 1715, and a certified copy of the record of such an assignment is evidence.

2. The assignment of *a mortgage* is an assignment not only of the claim against the mortgagor, but of all the securities which the *assignor* holds against the mortgagor or other parties *for the same debt.*

3. After notice to the debtor that his creditor, a bank, in good faith had transferred the debt to a third person to secure the latter for acceptances made

[Philips *v.* Bank of Lewistown.]

for the bank, the proceeds of which had been received by the bank, and after notice of the insolvency of the bank and after a general assignment by it in trust for its creditors, the purchase by the debtor of the depreciated notes of the bank and tendering them to the attorney or agent of the bank or its assignees in payment of his debt, will not defeat the claim against him by the innocent transferee.

4. The second section of the Act of 12th March, 1842, provides that when a bank has made *a general* assignment in trust for the benefit of all their creditors, "the assignees shall receive in payment of debts due to said bank, its own notes and obligations." If this provision be limited to the notes and obligations of the bank which the debtor had received *in the usual course of business* before notice of the assignment, its justice is so obvious as to require no aid from the statute. By the letter and spirit of the statute the notes of an insolvent bank purchased after notice of a general assignment for the benefit of its creditors, can be tendered only in payment of debts "due to the bank," to such as belonged to the bank at the time of its assignment, and which passed to the assignees; and not to such debts as were transferred by the bank before such assignment in good faith and for a valuable consideration, with the knowledge of the debtor.

5. It is not material in what manner the knowledge of the transfer was acquired by the debtor, so that it existed at the time of his purchase of the notes of the bank; it is not necessary that notice of the transfer be given to the debtor by the person in whose favor the transfer was made, nor is it necessary that it be given *in writing.*

ERROR to the Common Pleas of *Huntingdon county.*

This was a *scire facias* on a mortgage, sued out in the name of The Bank of Lewistown, the mortgagee, *v.* Hardman Philips, the mortgagor. The case was subsequently marked for the use of Wright & Nephew.

John Norris, Esq., since deceased, on the 23d January, 1841, had a note for $4600 discounted in the Bank of Lewistown, which note was payable to the order of William B. Norris, John Norris, Jr., and Hardman Philips, at the Bank of Lewistown, and was endorsed by them. After the death of John Norris, the drawer, the note was protested, and on the 15th December, 1841, judgment was obtained in the Common Pleas of Mifflin county, by the bank against the executors of the will of John Norris, the drawer, for $11,418.34, the amount of his liabilities to the bank, including the amount due on the note referred to; and on the same day judgment was obtained by the bank against William B. Norris and John Norris, Jr., for a large sum, including also the amount due on the said note.

On the 24th July, 1844, Hardman Philips executed in favor of the bank, *the mortgage* in question of land in Huntingdon county, in order to secure the balance due on said note, stated as being $3470.50, on the 7th December, 1843, errors and omissions to be excepted. The mortgage was in due time recorded in Huntingdon county.

On 6th August, 1847, a *scire facias* was issued on the mortgage, and was returned *nihil.* On 20th September, an *alias scire facias*

was issued, to which an appearance was entered, and on 17th January, 1848, plea of payment with leave, was entered.

On the 2d October, 1847, Messrs. Potter and Sterrett, at a meeting of directors of the Bank of Lewistown, reported that the committee to which they belonged, had made arrangements with A. Wright & Nephew to accept drafts upon which to raise money for the use of the bank, with the agreement that the bank would transfer to Wright & Nephew, certain *judgments* of the bank as collateral security for the payment of the acceptances, and also the mortgage of Hardman Philips to the bank, balance on it stated to be $4500.

It was on same day resolved, that the cashier be authorized to execute, under the corporate seal of the bank, the assignment of certain specified judgments, mortgages, and notes, the mortgage of Hardman Philips being included. On the 4th October, 1847, *the mortgage* was assigned by the cashier to A. Wright & Nephew, and the assignment was *recorded* in Huntingdon county on the 25th March, 1848.

On 2d October, 1847, Messrs. Potter and Sterrett from the committee also reported that they had made a conditional sale of $40,000 of certain judgments to Wright & Nephew, on certain terms mentioned.

On the 1st December, 1847, William B. Norris was elected cashier of the Bank of Lewistown, which office was tendered to him on the 6th December, and was declined by him on the 14th December, 1847. On 2d December, 1847, a committee of three, of whom William B. Norris was one, were appointed to carry into effect the recommendation in a report made, and they were authorized to receive from the officers of the bank such assets as the said creditors of the bank will be willing to receive, either in payment or as collateral security, and transfer them for that purpose.

On the 14th December, 1847, the said committee, viz., Messrs. Woods, Locke, and Norris, made report to the bank, *inter alia*, that Wright & Nephew had agreed to retransfer to the bank certain judgments, in consideration of the transfer to Wright & Nephew of certain assets of the bank mentioned in the report, and stating that they, the committee, had transferred the said assets accordingly, &c. The note secured by the mortgage of Philips was not included in the specification of assets thus transferred.

On the 4th January, 1848, William B. Norris had in his possession $4320 of notes of the bank of Lewistown, which had been recently procured through Mr. Burnside, *in Philadelphia*, and these notes were tendered to the attorney of the bank on that day, and on the same day to the cashier or late cashier of the bank, in payment of the note endorsed by himself, John Norris and Hardman Philips. The notes were declined.

William B. Norris had a bond furnished to Mr. Burnside, by

[Philips v. Bank of Lewistown.]

means of which to procure the notes, and Mr. Burnside left Lewistown on the 29th or 30th December, 1847, to proceed to Philadelphia, for the purpose of procuring the notes. When on his way to the city, Mr. Hale offered the notice referred to by him in his testimony. The tender was proved by Mr. Cornyn.

Mr. Woods testified that Messrs. Locke, Norris, and himself, were the committee appointed to proceed to Philadelphia, to try to make arrangements with creditors of the bank; that they had with them a copy of the minutes assigning the mortgage of Philips to Wright & Nephew. That after they returned from Philadelphia, viz., on the 13th or 14th December, 1847, he met William B. Norris in Lewistown, who inquired whether he was not the attorney of Wright & Nephew with regard to the Philips mortgage, and on his saying he was, Mr. Norris requested him not to put any more costs on it, that he expected money from Mr. Philips by the next steamer, and would arrange it.

The plaintiff's counsel proposed to ask the witness whether the committee had with them at Philadelphia the assignment of the mortgage read in evidence. The witness had said he had looked for it where he supposed it was likely to be; that he had the papers of Wright & Nephew. He did not inquire of *them* for the paper. The question was objected to, because there had not been sufficient search for the paper. The objection overruled, and exception on part of defendant.

J. T. Hale, *on part of plaintiff*, testified that on the evening of the 30th December, 1847, on the way down from Lewistown, he tendered to Mr. Burnside, in the stage coach, a written notice. Either then, or in a conversation before in the coach, he stated the notice, or effect of the notice, viz., that the mortgage to the Bank of Lewistown had been assigned to Wright & Nephew. Mr. Burnside objected to receiving the notice; he said that Mr. Bagshaw was the agent of Mr. Philips. Mr. Hale further testified that Mr. Philips was in England, and that he knew that Mr. Bagshaw was the land-agent of Mr. Philips; that Mr. Burnside was the attorney of Mr. Philips in this country, so far as he knew.

William B. Norris was offered, on part of defendant, to prove where he got the notes of the Lewistown Bank, and when he got them, and that he never had any notice of the assignment to Wright & Nephew previous to obtaining the notes.

He was objected to as being interested. The objection was sustained, and exception on part of defendant.

The case was tried before TAYLOR, J. On the trial, the counsel of defendant submitted points as follows:

1. That the mortgage of Hardman Philips to the Bank of Lewistown, was a mere incident of the indebtedness it was given to secure. 2. That whilst therefore the assignment of the note

to John Norris, endorsed by Wm. B. Norris, John Norris, jr., and Hardman Philips, secured by mortgage, would have carried with it the mortgage, the assignment of the mortgage did not carry with it the note. 3. That A. Wright & Nephew therefore acquired by the assignment of the mortgage no right whatever to sue upon the note; their only remedy being to sue on the mortgage. 4. That the note not having been assigned, it was competent for the executors of John Norris, deceased, the principal debtor, to pay in the notes of the Bank of Lewistown, on the 4th of January, 1848, or at any time since; and that if the jury believe the notes of the Bank of Lewistown, brought into Court, amounting to the sum of $4320, obtained and tendered as stated, the note is thereby satisfied to the amount thereof. 5. That though the jury should believe that Wm. B. Norris had notice of the assignment of the mortgage, prior to obtaining the notes tendered, such notice did not affect the right of the executors to pay and discharge the note of their testator given in evidence, by notes of the Bank of Lewistown.

Answer by Taylor, J.—To these five propositions, amounting, as they do, substantially, to the legal ground of defence noticed and discussed in our general charge, we have given a negative answer; and we so answer them here.

6. That if the notes of the Bank of Lewistown brought into Court, were obtained and tendered as stated, it constitutes a defence, of which Hardman Philips can avail himself in this suit.

Answer: That must depend upon the finding of the jury on the question of *notice*, as already distinctly submitted. If the notes were so obtained and tendered, *without or before notice of the assignment*, it operated as a payment and satisfaction of the debt to that extent, and, of course, of the mortgage; and "it constitutes a defence of which Hardman Philips can avail himself in this suit." If, on the other hand, the notes were so procured and tendered, *with or after notice of the assignment*, it was no payment of the assigned debt, or of the mortgage, and cannot avail here as a defence.

7. That to make the notice of the assignment effectual, it was necessary for the assignees to give notice to *all of* the executors of John Norris; that the mere knowledge of Wm. B. Norris, spoken of by Mr. Woods, is not sufficient; but that notice should have been given as well to him as to his co-executors, John and James C. Norris.

Answer: We refuse to answer this point as requested. Wm. B. Norris having procured and tendered the notes, "as one of the executors of John Norris, and as one of the endorsers of the note," notice to *him*, if the jury believe from the evidence that he had notice of the assignment at that time, we are of opinion, was sufficient to protect the rights of the assignees.

8. That an assignment of a collateral security as a collateral security, is not an assignment of the debt; and that the payment of the debt by the executors of John Norris, is a discharge of the mortgage of Mr. Philips.

To the proposition contained in the first part of this point, we have already given a negative answer in our general charge, and in our answer to the first five points. The latter point is answered in our answer to the fourth point.

9. That the notice to Mr. Burnside was no notice at all; and that Mr. Hale being informed that Mr. Bagshaw (a fact with which he testified he was acquainted) was the agent and attorney in fact of Mr. Philips, he was the proper person to whom notice should have been given.

We answer this as requested. But, as the notes were procured and tendered by Wm. B. Norris, and not by Mr. Philips, it is entirely immaterial whether notice be brought home to him or not. It is incumbent on the plaintiff to bring home notice to the debtor who procured the notes.

10. That at all events the bringing of the money into Court now, is a discharge *pro tanto ;* and that the defendant is entitled to a set-off to the amount brought into the Court, viz. $4320.

This being in substance the sixth point, our answer to it is contained in our answer to that point.

" Had Wm. B. Norris, then, *notice of the assignment,* when he procured the $4320 of notes of the Bank of Lewistown, afterwards tendered, as proven, and now brought into Court? This is the only material question of fact about which there appears to be any dispute; and this, in the view the Court has taken of the legal questions arising in it, is, we repeat, the turning question in the case.

" If you find, upon examination of the whole evidence bearing upon this question, that he had notice, then your verdict should be for the plaintiff for the true amount due upon the note recited in the mortgage on the 7th of December, 1848, and add interest from that time.

" If, on the other hand, the evidence does not satisfy you that he had notice of the assignment to Wright & Nephew, when the notes which were tendered and are now in Court were procured, the defendant is entitled to and should be allowed a credit on the mortgage to that amount, or of that date. And, in that view of the case, if the amount so tendered be found equal to the amount of the mortgage at that time, the 4th of January, 1848, your verdict should be for the defendant. If it should fall short of the amount then due, you should find for the plaintiff only the difference between the two amounts, with interest."

To which charge and opinion of the Court, the counsel of defendant excepted.

Verdict was rendered for the plaintiffs.

[Philips *v*. Bank of Lewistown.]

The following were assigned as errors:

1. The Court erred in receiving in evidence the record of the assignment of the mortgage of H. Philips, by Bank of Lewistown, to A. Wright & Nephew, assignments of mortgages not being proper subjects of record, and the assignment not being properly proved.

2. The Court erred in admitting the minute book of the Bank of Lewistown, under date of 22d November, 1847, to show that Wm. B. Norris was elected a director of the bank, when on the face of the minutes it appeared that Mr. Norris was never qualified.

3. The Court erred in permitting Mr. Woods to testify as to the contents of a paper, no sufficient search having been made for said paper.

4. The Court erred in receiving Mr. Hale's testimony as to the notice to Mr. Burnside, the rule of Court requiring all notices to attorneys to be in writing.

5. The Court erred in rejecting the testimony of Wm. B. Norris.

6. In their answers to the 1st, 2d, 3d, 4th, and 5th points put by the defendant's counsel.

7. In their answer to the other points of the defendant's counsel.

The case was argued by *Burnside* and *McAllister*, for plaintiff in error.—By the provision in the Act of 1842, the assignees in the general assignment by the bank, were bound to receive the notes of the bank in payment of its claims. At this time, the claim under the mortgage was not marked to the use of Wright & Nephew. The note of John Norris was capable of being thus paid, and it was not material how the notes were obtained.

*Notice* and *knowledge* are different: 16 *Ser. & R.* 157. No *actual* notice of the assignment of the mortgage was given to William B. Norris. The testimony of Mr. Woods was not sufficient to prove notice. He was not the attorney on record; he did not know that the *scire facias* had issued. But if Mr. Norris had *knowledge* of the assignment, he had not *notice* of it, and no notice was given to the two other executors of the will of John Norris.

The assignment of the *mortgage* was not an assignment of the note which it was designed to secure. It was an assignment only of the right to receive money out of the sale of the land mortgaged, in case it were sold before the endorsers of the note paid it, or any part of it. The mortgage was itself a *collateral security ;* and it was assigned as a collateral security to Wright & Nephew, and they did not show that they gave a valuable consideration for the transfer, or that the bank was indebted to them at the time of trial. The note of John Norris remained in the bank.

*Miles* and *Hale,* contrà.

The opinion of the Court was delivered, June 4, by

LEWIS, J.—On the 23d January, 1841, the Bank of Lewistown discounted a note for $4600, made by John Norris, and endorsed by William B. Norris, John Norris, Jr., and Hardman Philips. The note was protested for non-payment at maturity, and judgments were recovered against the executors of the maker, and against William B. Norris and John Norris, Jr. (two of the endorsers), for large sums of money, including the amount of the note above described. On the 22d July, 1844, Hardman Philips executed a mortgage to the Bank of Lewistown, to secure the payment of the balance remaining due on the note. On the 4th October, 1847, the bank assigned the mortgage to A. Wright & Nephew, "as collateral security for the payment of their acceptances made for the accommodation of the bank." On the 7th December, 1847, the same William B. Norris (who was also one of the directors of the bank), signed a written report made to the board, in which the acceptances of Wright & Nephew, for the bank, are stated to have been made on the 22d September, 1847, and are particularly enumerated and described, and stated to amount in the aggregate to $40,000. It is admitted in this report that the proceeds of the acceptances " were applied to the benefit of the Bank of Lewistown." On the 14th December, 1847, the bank made a general assignment for the benefit of its creditors. On the same day, or the day before, according to the testimony of Samuel S. Woods, Mr. Norris asked Mr. Woods if the latter "was not the attorney of Wright & Nephew with regard to the Philips mortgage," and being answered in the affirmative, requested Mr. Woods "not to put any cost, or any more cost, on it," stating that he or they "expected money by the next steamer from Mr. Philips, and would arrange it." On the 30th December, 1847, while Mr. Burnside, at the instance, and with the funds of the executors of John Norris, was on the road to Philadelphia, for the purpose of obtaining the notes of the Lewistown Bank (then depreciated and no longer current), he was informed by the attorney of Wright & Nephew that the mortgage had been assigned to them for a valuable consideration. Mr. Burnside, notwithstanding this notice, proceeded upon his mission, obtained the notes of the Lewistown Bank, and gave them to William B. Norris, who, as executor of his father, the maker, and as endorser of the note, tendered the notes thus obtained to Mr. Woods, the attorney of Wright & Nephew.

The assignment of the mortgage to Wright & Nephew was recorded in Huntingdon county, where the mortgaged premises were situated, and an office copy was received in evidence, under objection from the defendant below. In Craft v. Webster, 4 *Rawle* 242, Mr. Justice KENNEDY endeavored to show that an assignment of a mortgage was not within the Recording Act, so as to secure to the assignee any additional protection against a subsequent

assignment. But the instrument before him was not a mortgage, and the learned judge admitted that the question which he discussed did not arise in the cause. It is to be regretted, that under such circumstances, he permitted his mind to be committed on a question so important. In Mott *v.* Clark, 9 *Barr* 406, Mr. Justice ROGERS, in view of the opinion of the judge who delivered the judgment in Craft *v.* Webster, stated the law to be, that "the assignee *is not bound* to register his assignment." But the question whether an assignment of a mortgage may not be recorded so as to make a certified copy of it evidence, seems not to have been decided. The Act of 28th May, 1715, expressly declares, that "all bargains and sales, deeds and conveyances of lands, tenements, and hereditaments, may be recorded." A mortgage is in *form* a conveyance of the land, and an assignment of it is another *formal* conveyance of the same land. The assignment of a mortgage is therefore within the language of the recording Act of 1715. It has been the usage to record such instruments, because they affect the land, and are links in the chain of title. A release or satisfaction of a mortgage executed by an assignee, would be worthless without the production of the assignment. Its registry is therefore as important to the owner as the registry of the release or the entry of satisfaction. A construction which promotes public convenience, accords with long usage, is productive of no evil whatever, and at the same time follows the letter of the statute, may fairly be held to be within its true intent and meaning. The indications of an intention to give it a different construction may have produced the Act of 9th April, 1849, which expressly declares that "all assignments of mortgages and letters of attorney authorizing the satisfaction of mortgages" "may be recorded," and that "certified copies" of such records "shall be evidence." This Act, although not to be received as an authoritative construction of the previous legislation on the subject, is entitled to consideration as showing that the construction now given to the Act of 1715 accords with the views of public convenience which are entertained by the representatives of the people. A mortgagee stands on the footing of a purchaser of the land, and his assignee, without notice, takes it discharged of the latent equity of third persons: Mott *v.* Clark, 9 *Barr* 405. *Forms* are not to be regarded when opposed to justice and public convenience, but when the *form* of an instrument can be made subservient to both, such an application of it is justified by the soundest principles of jurisprudence. Every man is bound to enjoy his property so as to do no unnecessary injury to another. Upon this principle it has been held to be the duty of an assignee of a judgment to docket it for his use, in order that others may not be defrauded by the former owner: Fisher *v.* Knox, 1 *Harris* 622. The same principle, independent of the words of the statute and

[Philips v. Bank of Lewistown.]

the form of the instrument, justifies the assignee of a mortgage in placing it upon record.   We give no opinion upon the effect of such a record, further than to say that a certified copy of it is evidence.

In this case the debt was secured by a note, a judgment against the drawer, another judgment against one of the endorsers, and a mortgage against Philips, the other endorser.   An assignment of the debt is an assignment of all the securities for it, and any order, writing, or act, which amounts to an appropriation of a fund, is an assignment of the fund.   Even an assignment of a bond, which has been extinguished by a judgment, will carry the judgment, because it is sufficient evidence of the purpose of the assignor, which was to assign the debt, not the mere paper on which the obligation was written.   The rule of common sense is the rule of law on this subject; and the assignment of the mortgage, is an assignment not only of the claim against the mortgagor, but of all the securities which the assignor may hold against him, or other parties, for the same debt.   In Selfridge v. The Northampton Bank, 8 *W. & Ser.* 311, the assignment in its language embraced the mortgage alone, but it was treated by all the counsel, and by the Court, as an assignment of the debt.   That it was so intended by the parties, was too clear for argument.

The case before us does not require an opinion on the question how far one who receives, as collateral security for a pre-existing debt, an assignment of claims against others, takes them subject to the equities which existed between the parties *at the time of assignment.*   The question here is, whether a debtor, *after notice that his creditor had assigned the debt to a third person, to secure the latter for acceptances made for the creditor, the proceeds of which had been received by him, and after notice also of the insolvency of the assignor,* could purchase, for a trifling consideration, desperate claims against the insolvent creditor, for the purpose of tendering them in payment of the debt, in the hands of the inno‧cent assignee.   The plainest principles of justice require that this proposition should be answered in the negative.   It is perfectly lawful for any one who has incurred liabilities for another, to receive the transfer of a *chose in action*, as a security to cover any loss which may accrue.   By accepting the transfer he acquires a right which the debtor is bound to respect, and which cannot, according to the rules of equity, or the principles of the common law, be defeated by the debtor.

But it is said that by the statute of 12th March, 1842, it is provided that when a bank makes a general assignment for the benefit of its creditors, " the assignees shall receive in payment of debts due to the bank, its own notes and obligations."   If this provision be confined to the notes and obligations of the bank which the debtor had taken, in the usual course of business, *before*

SUPREME COURT [*Harrisburg*

[Philips *v.* Bank of Lewistown.]

*notice of the assignment,* its justice is so obvious as to need no support from the statute. But when a right is claimed under it by which a debtor is to make large gains out of the insolvency of an institution, whose failure has been accelerated by his own refusal to meet his engagements; and when this is to be accomplished by defeating the just claims of creditors, after full notice of their rights, through the purchase, for a trifling consideration, of the depreciated notes of the bank, after its insolvency and general assignment for the benefit of creditors were known, we are called upon by the highest considerations of duty to confine the statute to the cases for which its provisions were intended. The construction adopted by the plaintiff in error would not only place it in the power of the debtors of a bank to make large fortunes out of its ruin, to the injury of its honest creditors, but would present a constant temptation to the directors, and others having a controlling influence in its management, to obtain large loans from it, and then reduce it to insolvency for the purpose of purchasing its depreciated paper, at enormous discounts, to meet their engagements. By the letter and spirit of the statute the notes of an insolvent bank, purchased after notice of a general assignment for the benefit of creditors, can only be tendered in payment of "debts *due to the bank,*" that is, to such as belonged to the bank, *at the time of the assignment*—and passed to the trustees; and *not to such debts as were transferred before the assignment,* in good faith, for a valuable consideration, with the knowledge of the debtors.

The purchase of depreciated notes, after knowledge of such an assignment, is an act of bad faith, injurious to the rights of others. It is immaterial in what manner the knowledge of the transfer was acquired, so that it existed at the time of the purchase. It is not necessary that notice should be given by the party claiming the transfer, nor is it required that it be in writing. In the case of Northampton Bank *v.* Balliet, 8 *W. & Ser.* 311, the knowledge was derived from conversation with an agent of the assignor, who had no further interest in the demand. And in the case of McKinney & Heller *v.* Brights, 4 *Harris* 399, where the party injured by a misapplication of funds was aware of the injury about to be done, he was not required to give any notice whatever of his rights, because the parties concerned were already possessed of such knowledge. In a case of this kind, all that is required is to lay before the jury such circumstances as justify them in drawing the inference that a knowledge of the assignee's rights existed at the time the measures were taken by the debtor for the purpose of defeating them. Such evidence existed in this case, and was properly left to the jury. The evidence of a consideration for the transfer, in the acceptances of Wright & Nephew (the proceeds of which were received by the bank), was also ample, if not conclusive.

[Philips v. Bank of Lewistown.]

There is nothing in this record affecting injuriously the rights of the plaintiff in error, and the judgment is therefore to be affirmed.

Judgment affirmed.