CROW, McCREARY & Co. *v.* VANCE.

The assignment of a promissory note, secured by mortgage, carries the mortgage with it; and the assignee may maintain an action upon the mortgage in his own name to enforce the lien.

The right of the mortgagee is a mere chattel interest, inseparable from the debt it is intended to secure, and transferable by a mere assignment of the debt, without deed or writing.

Crow, McCreary & Co. v. Vance.

By the assignment of the debt, the assignee is entitled to use all the remedies the assignor might have used, to enforce the lien of the mortgage against the debtor.

Previous to the year 1849, V. sold to B., a tract of land, on which to erect a mill, and to secure the sum of $800, due on the land, executed a deed of trust to V., under which the land was subsequently sold, and purchased by V. On the 16th of July, 1849, B. being indebted to R., for money paid by R., for the purpose of building a mill and other improvements on the land, executed a note to R. for $325, payable in one year, and secured the same by a mortgage on the land bought of V., and also agreed that R. should hold a lien on the land, for all money, goods, materials and labor, furnished or paid by him, towards the erection of the buildings or mill dam. On the 2d of May, 1850, V. executes to R. an instrument in writing, to the effect, that "V. agrees that R. shall hold a lien for all moneys, materials and labor, paid for by said R., for building a mill or other improvements on said land, and said R. agrees to furnish B., on their agreement, such things as their contract calls for, to build said mill, which writing was signed by V., but not by R. When the land was sold under the trust deed, is not shown. In November, 1850, R. assigned the note, and delivered the mortgage from B. to the plaintiffs, and also delivered to them the agreement of V. On a bill filed by the plaintiffs, against B. and V., praying a foreclosure and sale as to the land, which shall postpone to the claim and lien of the plaintiffs, any interest of V. in the premises;

*Held,* 1. That the agreement of V. with R., dated May 2, 1850, was an undertaking on the part of V., to give to R., a lien on the land, for all money, labor, or materials advanced by R., for the purpose of building the mill and other improvements on the land, before as well as subsequent to the date of the agreement, and included the sum for which the note of B. was executed.

2. That the court erred in excluding the agreement of V. from the jury.

3. That the plaintiffs, by virtue of the assignment of the note and mortgage of B., acquired the right, under the agreement of V., dated May 2, 1850, to a decree against V. postponing any claim he might hold against B. and the land, to the claim and lien held by the plaintiffs.

4. That the agreement of V. to give R. a lien, imparted a quality to the debt of B. to R., which passed to the plaintiffs with the assignment of the note.

*Appeal from the Des Moines District Court.*

FORECLOSURE of a mortgage. The defendant, H. M. Vance, previous to the year 1849, had sold to Peter Brewer, a tract of land on Skunk river, in Des Moines county, on which to erect a mill, and to secure the payment of $800 of the purchase money, received from Brewer a trust deed of the premises. On the 16th July, 1849, Brewer being indebted to B. F. Roe, in the sum of $325.50, gave his note for

that amount, payable in one year, and to secure the payment of the same, gave Roe a mortgage on the land bought by him of Vance. By an instrument of writing of the same date, executed by Brewer to Roe, it appears that the money for which the note was given, was paid by Roe to Brewer, for the purpose of building a mill and other improvements on the land; and that Brewer further agreed, that Roe should hold a lien on the land for all moneys, goods, materials, and labor furnished or paid for by him towards the erection of the buildings or mill dam. On the 2d of May, 1850, Vance, the defendant, executed to Roe an instrument of writing, to the effect, that "Vance agrees that B. F. Roe shall hold a lien for all moneys, materials and labor paid for by said Roe, for building a mill and other improvements on the land, that I, the said Vance, sold to Peter Brewer to build said mill on." It is further set forth in the writing, that "said Roe agrees to furnish said Brewer, on their agreement, such things as their contract calls for, to build said mill." This writing is signed by Vance but not by Roe.

In November, 1850, Roe assigned the note and mortgage of Brewer to the plaintiffs, who bring suit thereon, making Brewer and Vance, defendants, praying judgment against Brewer for the amount of the note and interest, and a decree of foreclosure and sale as to the land, which shall postpone to the claim and lien of the plaintiffs, any interest of Vance in the premises. The petitioners aver, that the note was given by Brewer for money paid, and for materials and labor furnished, by Roe, in erecting the mill and other improvements on said tract of land. The defendants were required to answer under oath. Brewer answered, denying any indebtedness to plaintiffs. Vance answered, admitting that he had agreed that Roe should hold a lien on the land, provided he would furnish materials for the completion of the mill. He denies that Roe furnished the materials or finished the mill. He denies that he consented that Roe should hold a lien on the land for the amount of the note sued on; and avers that the writing signed by him, and delivered to Roe, was intended by him to cover only advances

to be made by Roe, subsequent to its date, and not to cover any prior advances; and that it had no reference to the debt or mortgage now sued and sought to be foreclosed. Issue was joined on the answer of the defendants, and on the trial, the plaintiffs, having proved the execution of the agreement signed by Vance, offered the same in evidence. Objection being made, and questions raised as to the effect of the agreement, upon the right of the plaintiff to the relief prayed for against Vance, the court held, that the agreement was not an undertaking on the part of Vance, to give to Roe a lien for the payment of the note, but only for such money, labor and material, as should be furnished by Roe to Brewer to build the mill, subsequent to the date of the agreement. The court further held, that it was not such a security as passed to the plaintiffs, by the assignment of the note, so that they could have the benefit of it in this action against Vance. The plaintiffs then offered to introduce evidence, to show that the instrument of writing signed by Vance, was intended to cover the money due by the note, as well as all future advances, and that said advances had been made by Roe, in pursuance of said agreement. The defendant objected to the introduction of this evidence, and the objection was sustained, and the evidence excluded. A verdict was returned for the defendant, and a decree rendered denying to plaintiffs the relief prayed for against Vance.

The plaintiffs appeal. The other material facts will be found in the opinion of the court.

*D. Rorer* and *J. C. Hall*, for the appellants.

*Browning & Tracy*, for the appellee.

STOCKTON, J.—The first assignment of error, is upon the ruling of the District Court, excluding from the jury the written instrument executed by Vance to Roe, on the ground that it was not an undertaking on the part of Vance, to give to Roe a lien on the land for the payment of the money due on the note, but only for such money, labor and materials as should be furnished by him, to build the mill, subse-

quent to the date of the agreement.   We can give no other construction to this agreement of Vance, than such as shall apply its meaning to all money, labor, or materials advanced by Roe, for the purposes contemplated by the parties, before as well as subsequent to its execution.   The language used, is certainly broad enough to comprehend both.   Vance agrees that Roe shall hold a lien upon the land, for all money, labor and materials, paid for by Roe, for building the mill and other improvements on the land sold by Vance to Brewer.   There is no rule of interpretation known to us, which will restrict the application of this language to subsequent, rather than to prior, advancements. It appears to us more reasonable to limit its operation to the past, than to confine it solely to the future.   The language is, "money, materials and labor *paid for* by Roe;" and not such as he is yet *to pay for*, or advance.

The second assignment of error, is upon the refusal of the court, to suffer evidence to be introduced, to show that the instrument of writing was intended by the parties to cover the amount due on the note, as well as future advances to be made by Roe.   As we are of opinion that the court erred in its construction of the instrument of writing, it will not be necessary to notice the question raised by the second assignment of error, further than to say, that, as by our construction of the instrument, it expressly extends to any advances previously made by Roe, to Brewer, for building the mill, the plaintiff need not prove *aliunde*, that such was the intention of the parties.

We next inquire, whether, by the assignment of the note and mortgage of Brewer to plaintiffs, they acquired any right, under the agreement of Vance, dated May 2d, 1850, to a decree, in this suit, against Vance, postponing any claim or lien he might hold against Brewer or the land, to the claim or lien held by plaintiffs.   In other words, is their lien upon the land prior to that of Vance, by virtue of the assignment of the latter with Roe ?   It does not very distinctly appear what interest in or claim upon the land, was retained by Vance after his sale to Brewer.   By the answer

Crow, McCreary & Co. v. Vance.

of Vance, it is alleged, that Brewer owed him eight hundred dollars, a balance of the purchase money unpaid; that the land was sold under a deed of trust, executed by Brewer and wife, to secure the payment of this balance; and that the title under the sale passed to Vance. At what time this sale was made, is nowhere stated. As the answer of Vance, as to the amount due to him from Brewer, for which he retained a lien, is not denied, we presume it will be safe for us to assume, that the lien retained by Vance for this unpaid balance of the purchase money, was the extent of his interest in the land; and that his lien upon it, for this amount, was prior in point of time, to that accruing to Roe, under the mortgage from Brewer. The agreement between Vance and Roe, in order that it may have its true effect and meaning, must receive its construction with reference to the state of facts existing between the parties, Brewer, Roe and Vance. The latter had sold and conveyed to Brewer, the land on which to erect the mill, retaining a lien upon the same for eight hundred dollars, a balance of the purchase money. Brewer, anxious to complete the erection of the mill, sought the assistance of Roe, who agreed to furnish money, labor and materials for its construction. Having advanced $325.50, to secure the payment of which to him, the note and mortgage were executed by Brewer, he was unwilling to furnish any further means, until he could be assured that the lien of his mortgage upon the property, should have priority over that held by Vance, under his deed of trust. In this state of affairs, the instrument of writing, set forth in the pleadings, and upon which the controversy in this cause has arisen, is signed by Vance, and delivered to Roe. By it, he agrees that Roe shall hold a lien for all moneys, materials and labor, furnished or paid for by him, for building the mill or other improvements on the land. We have said that this agreement of Vance, in its grammatical construction, refers more reasonably to advances already made, than to those he might thereafter make to Brewer. Taking the language cited, however, in connection with the subsequent part of

the agreement, where it is provided that "Roe agrees to furnish Brewer such things to build the mill, as their contract calls for;" we think it was intended to give a lien for all advances made by Roe, whether before or after the date of agreement.

But what lien is it, that Roe is "to hold?" Why is the consent of Vance necessary to the consummation of any lien that Brewer may wish to give to Roe on the land? The meaning evidently is, that Vance consents that Roe shall hold a lien upon the premises, under the mortgage of Brewer, prior to, and better than that of Vance, under his deed of trust. Any other construction would take from the language of the agreement, all its meaning, and render it a nullity. The objection of the want of consideration for the agreement of Vance, we pass by, with the remark, that if it were necessary that such consideration should be shown, it may be found in the fact, that the means furnished by Roe were expended in erecting the mill, and in other improvements, upon the land, to which the defendant's lien attached, enhancing its value, and thereby increasing his security. And this same land was afterwards sold, and the title to it acquired by defendant, under the deed of trust given to secure to him the payment of his $800, the unpaid balance of the purchase money—whereby he has got back his land, with all the improvements put upon it by Brewer. The fact that these improvements were made, and this enhanced value given to the land, with the money and means furnished by Roe, is surely a sufficient reason and consideration for the agreement of Vance, to give priority to the lien of Roe's mortgage.

We next inquire as to the effect of the assignment of the note to the plaintiffs, and whether such assignment carried with it, as a necessary incident, a lien upon the land, superior to that of Vance, and such as rendered Vance's interest in the land, liable to foreclosure and sale, to satisfy the debt. It is a settled doctrine in equity, that the assignment of a promissory note, secured by mortgage, carries the mortgage with it; and the assignee may maintain an action upon it in

his own name, to enforce the lien. Mortgages are not now considered as conveyances of land, within the statute of frauds. The right of the mortgagee is a mere chattel interest, inseparable from the debt it is intended to secure, and transferable by a mere assignment of the debt, without deed or writing. The debt is the principal thing. The right of the mortgagee in the land, is an incident attached to the debt, and ceasing when the debt is discharged. *Green* v. *Hart*, 1 Johnson, 590; *Southerm* v. *Mendum*, 5 N. H. 420, 432; *Rigney* v. *Lovejoy*, 13 Ib. 247; *Burdett* v. *Clay*, 8 B. Monroe, 294; *Dick* v. *Maury*, 9 Sm. & Mar. 448; *Henderson* v. *Herrod*, 10 Ib. 633. This doctrine rests upon the well established principles of courts of equity, which, under circumstances closely analogous, entitle a surety who pays the debt, to every remedy which the creditor has against the principal debtor; to enforce every security, and all means of payment; to stand in the place of the creditor; to have all securities transferred to him; and to avail himself of them against the debtor. This right is stated as depending, rather upon a principle of equity and natural justice, than upon contract. *Craythorne* v. *Swineburne*, 14 Vesey, 160; *Hayes* v. *Ward*, 4 Johns. 123; *Matthews* v. *Aiken*, 1 Comstock, 595; *Clawson* v. *Morris*, 10 Johnson, 524. So, on the same equitable principles, it has been held, that the creditor is entitled to the benefit of the securities taken by a surety from his principal, for his own indemnity. The creditor may have them applied in discharge of his debt. *Dick* v. *Maury*, 9 Sm. & Mar. 448; *Bank of Auburn* v. *Throop*, 18 Johnson, 505; *Waring, ex parte*, 19 Vesey, 345; *Curtiss* v. *Tyler*, 9 Paige, 431. So, as a general rule, sureties are entitled to the benefit of all securities which may have been taken by any one of them, to indemnify himself against their joint liabilities for their principal. The security taken by one, enures to the benefit of all. *Elwood* v. *Deifondorf*, 5 Barbour, 398. In the present case the mortgage, as well as the note, was assigned to the plaintiffs. There can be no question, but that all the rights of Roe to the debt, and all

his lien under the mortgage from Brewer, to secure the payment of the debt, passed to plaintiffs by the assignment.

Whether the assignment carried with it, also, the right which Roe obtained, by the agreement of Vance, to the prior lien on the land, is a more difficult question. This agreement was not transferred to plaintiffs by indorsement. It is in their possession, however, and it is assumed that it came there lawfully, at the time of the assignment of the note and mortgage by Roe. By the assignment of the debt, the assignee is entitled to use all the remedies, the assignor might have used, to enforce the lien of the mortgage against the debtor. Does his right extend further and may he enforce a lien which the assignor held against another person? Although the agreement executed by Vance, is not assigned by Roe, there seems to have been an obvious intention on his part, to transfer to the plaintiffs, the note he held against Brewer, with all its qualities and incidents, and to clothe them with all the rights to collect it, and to enforce all the liens given to secure its payment, that he possessed himself. The priority accorded to Roe's mortgage, by the agreement of Vance, was in the nature of an additional security acquired by him, which continued an incident of the debt, after it passed from his hands by assignment. Vance did not become surety for Brewer, nor did he guaranty the payment of his note to Roe. Holding a deed of trust upon the land, he does, however, agree to waive his lien, and postpone its admitted priority in favor of Roe.

We do not see why this agreement of Vance, should not be held, upon the well established principles of equity, to impart a quality to the debt which passed to plaintiffs by the assignment, and which entitles them, in this suit, to a decree postponing the lien of Vance to theirs, and subjecting his interest in the land, so far as the same may be necessary to the payment of their claim against Brewer. We have not been cited by counsel, to any other authority to this question, nor in the consideration we have given to the cause, have we met with any that can be deemed directly

in point.  The case of Curtiss v. Tyler, 6 Paige, 431, is, however, so nearly analogous, that we may receive it as authority for our judgment in this case.  It was there ruled by WALWORTH, Chancellor, that the assignor of a bond and mortgage, will be held, on a principle of equity, to be a surety for their payment, in such a sense, that any collateral security held by him for the payment of the debt, will enure to the benefit of the holder of the bond and mortgage; and on a bill filed to foreclose the mortgage, in which the party giving such collateral security, was made a party for the purpose of obtaining a decree over against him, in case of any deficiency upon a sale of the mortgaged premises, and in case such deficiency could not be collected from the mortgagor; on demurrer by the collateral guarantor, it was held that the complainant was entitled to the decree prayed for against him.

Upon principle and authority, then, we are of opinion that the plaintiffs are entitled to the relief prayed for against Vance.  And the judgment of the District Court will be reversed, and the cause remanded, with directions to that court to award a new trial upon the issue joined with Vance, and for other proceedings not inconsistent with this opinion.

Judgment reversed.