## The Real Estate-Land Title and Trust Co. v. Pivot B. & L. Ass'n

*Gerald J. Greeve* and *Samuel R. Lazowick,* for plaintiff.
*Moss & Moss,* for defendant.

KUN, J., February 3, 1932.—Philadelphia Company for Guaranteeing Mortgages, the use-plaintiff, became the owner of a certain bond and mortgage in the sum of $3500 executed and delivered July 3, 1925, by Morris Mintz and Jennie, his wife, to the Real Estate Title Insurance and Trust Company, which subsequently merged with and became known as The Real Estate-Land Title and Trust Company. The said mortgage covered the premises known as No. 635 West Venango Street, Philadelphia, which were owned by Jennie Mintz, and, after intervening assignments, was finally assigned to the Philadelphia Company for Guaranteeing Mortgages.

The said premises were conveyed by the Sheriff of Philadelphia County to the Assured Building and Loan Association by deed dated April 5, 1928, which association on March 29, 1928, merged with and became known as the Pivot Building and Loan Association.

On January 19, 1931, The Real Estate-Land Title and Trust Company, as successor to the Real Estate Title Insurance and Trust Company, at a time

when the premises were owned by the Pivot Building and Loan Association, entered into an agreement, a copy of which is attached to the statement of claim, with the said association to extend the mortgage as is set forth in paragraph nine of the plaintiff's statement of claim. The extension agreement provided, inter alia:

"The party of the second part (the defendant) hereby guarantees, assumes and covenants to make prompt payment of the interest and principal of said bond so secured, together with all taxes and water rents assessed and to maintain the fire insurance as aforesaid."

By reason of subsequent assignments, the Philadelphia Company for Guaranteeing Mortgages became owner of the aforesaid mortgage. There being defaults, the mortgage was foreclosed and damages assessed in the amount of $3840.08. The property was sold to the attorney on the writ for $150 and title was taken in the name of the Midrealty Company, which is a wholly owned subsidiary Company of the Philadelphia Company for Guaranteeing Mortgages.

As the $150 purchase price was used to meet the costs of the foreclosure proceedings, none of the obligations on the bond and mortgage were repaid. The defendant had, as stated, agreed to make payment of the interest and principal of the bond secured by the mortgage, which agreement by its terms was to extend to the successors and assigns of the parties thereto. This the defendant has failed and refused to do, wherefore this proceeding was instituted against it to recover the amount due on the mortgage.

An affidavit of defense raising questions of law was filed, the principal question being whether a grantee of premises encumbered by a mortgage, who, for a valuable consideration, expressly assumed liability therefor to the mortgagee, said assumption to extend to and bind the respective assigns of the parties thereto, would be liable on said agreement to an assignee of said mortgage and of the assumption agreement.

The defendant claims it is not liable because of the provisions of the Act of June 12, 1878, P. L. 205, as follows:

"1. A grantee of real estate which is subject to ground rent or bound by mortgage or other encumbrance, shall not be personally liable for the payment of such ground rent, mortgage or other encumbrance, unless he shall, by an agreement in writing, have expressly assumed a personal liability therefor, or there shall be express words in the deed of conveyance stating that the grant is made on condition of the grantee assuming such personal liability: Provided, that the use of the words 'under and subject to the payment of such ground rent, mortgage or other encumbrance' shall not alone be so construed as to make such grantee personally liable as aforesaid.

"2. The right to enforce such personal liability shall not enure to any person other than the person with whom such an agreement is made, nor shall such personal liability continue after the said grantee has bona fide parted with the encumbered property, unless he shall have expressly assumed such continuing liability."

An analysis of the cases decided under this act will show that it is not applicable to the instant case. The purpose of the Act of 1878 was stated by Mr. Justice Fell in Kirker v. Wylie, 207 Pa. 511, 512 (1904), as follows:

"Before the Act of June 12, 1878, P. L. 205, the words 'under and subject' in a conveyance were construed as a covenant of indemnity for the obligation of a grantor, and when he purchased land directly subject to his grantor's mortgage made the debt as between them his own and assumed to protect his grantor. . . . The purpose of the Act of 1878 was to relieve the grantee from

an implied liability (of indemnity for the obligation of the grantor) arising from the use of the words 'under and subject.'"

In the case cited, a conveyance had been made "subject to two certain mortgages now on said property, amounting to $13,000, which said second party assumes and agrees to pay, they being part of the consideration hereto." The plaintiff was the grantor and the defendant was the grantee, and plaintiff brought the action to recover the amount of the loss sustained by him by reason of the defendant's failure to pay the mortgage. The court further said:

"It is argued, however, that the defendant is relieved by the second section of the act, having parted with the property in good faith and not having assumed a continuing liability. The second section provides that [section two was here quoted]. The liability assumed which the grantee agreed to pay was a part of the consideration for the conveyance. It was as much a continuing liability as an obligation to pay a fixed sum of money and it could be discharged only by payment."

And in the case of Schmidt *v.* Gibson, 12 Dist. R. 561 (1903), a rule for judgment for want of a sufficient affidavit of defense was made absolute by the Court of Common Pleas of Allegheny County. There the grantee in the deed took subject to certain mortgages "which the said party of the second part agrees and assumes to pay." Suit was brought by the grantor to recover the money secured by the mortgage. An affidavit of defense was filed, averring that the words used in the conveyance did not create a personal liability on the part of the grantee, and, further, that if such liability ever did exist, the defendant, before suit brought, sold and conveyed the premises in good faith, and that upon such conveyance the liability ceased under the second section of the Act of June 12, 1878, P. L. 205. McClung, J., said:

"Upon the argument of the case counsel for defendant frankly admitted that an examination of the cases had convinced him that the words used were sufficient to create personal liability, and that a suit brought, as is the present one, can be maintained if the liability still exists. He, however, still contends—and this is now his sole contention—that under the second section of the act quoted, the liability of the defendant ceased when she, on June 20, 1902, conveyed the property to a third party. When this defendant accepted a deed for the lots, subject to the mortgage, with the added words 'which the said party of the second part agrees and assumes to pay,' it would seem as clear that she assumed a personal liability which was to continue *until the debt assumed was paid* [italics are the court's] as that she assumed a personal liability at all."

It has been said that the Act of 1878 "does not affect the liability of the grantee to the grantor, but applies only to the relations between the grantee and the holder of the encumbrance:" May's Estate, 218 Pa. 64, 70 (1907) ; but we have here what the statute requires to impose liability on the grantee or holder of the title—an agreement in writing, expressly assuming personal liability for the payment of the mortgage, and the above authorities show that the liability assumed by the defendant herein was a continuing liability and would have to be so construed if it had appeared in the deed to it. A fortiori, in this case, as the assumption of continuing liability by defendant was in a separate paper, that is to say, in the agreement of extension for the payment of the mortgage in consideration of which the liability was directly assumed and which by its terms provided that it was to bind the assignees of the parties. We have, therefore, not a case where the plaintiff is endeavoring to hold the defendant on a supposed implied liability because it took a deed "under and subject" merely to a certain stated mortgage, but the claim is based on a direct, affirmative and collateral covenant on its part made with the holder of the

mortgage (the legal plaintiff) to pay the mortgage, expressing a continuing liability in form, and moreover by its terms binding on the assignees of the respective parties. It is clear to the court that the limitation of liability of a grantee under the Act of June 12, 1878, P. L. 205, is not applicable to the facts in this case.

We find no merit in the other contention of the defendant that it is not liable because the assignment of the collateral assumption agreement was not made to the use-plaintiff until some time after the mortgage itself was assigned to it and after the sale of the property under the mortgage. The assignment of the mortgage carried with it the assignment of all the securities which the assignor held and the collateral agreement of assumption of liability by defendant was such additional security, so that had there been no formal assignment of the assumption agreement, the use-plaintiff would have been entitled to the benefit of it: 2 Jones on Mortgages (8th ed.), Par. 1052; Philips v. Bank of Lewistown, 18 Pa. 394, 403; Fleming v. Parry, 24 Pa. 47, 52; Curtis v. Tyler & Allen, 9 Paige 432 (N. Y.); Weiss v. Malkin, 200 N. Y. Supp. 302; Loveridge v. Shurtz, 111 Mich. 618, 620; Byles v. Lawrence, 35 Mich. 458, 459; Crow, McCreary & Co. v. Vance, 4 Iowa 434, 442.

Of course, a mere collateral contract of guaranty for the payment of the mortgage debt (as distinguished from an affirmative covenant to pay as in the instant case), if it is strictly a personal engagement and does not by its terms extend to the assignees of the parties, is not carried with the assignment of the mortgage: Jones on Mortgages (8th ed.), Par. 1053. Such, however, is not the case before us.

Moreover, as we have pointed out, there was in the instant case a formal assignment of the assumption of liability agreement (by its terms assignable) from the legal plaintiff to the use-plaintiff to which the legal plaintiff had assigned the mortgage. Defendant is not in a position to question the validity of that assignment or the consideration which passed between the parties for it. Indeed, it is clear that under the authorities the use-plaintiff was entitled to have the assignment made to it.

The affidavit of defense raising questions of law is overruled, with leave to the defendant to file an affidavit of defense in fifteen days, in default of which the plaintiff may have judgment against the defendant for want of an affidavit of defense.