375 F.Supp. 681 (1974)
In re IMPERIAL FEED PRODUCTS, INC., Bankrupt.
Trustee, John A. MORROW, Jr., Plaintiff,
v.
BERKELEY BANK FOR COOPERATIVES, Defendant.
No. 11784.
United States District Court, S. D. California.
April 19, 1974.
Edward D. Benes, Berkeley, Cal., for Berkeley Bank for Cooperatives.
James H. Carter, Horton, Knox, Carter & Foote, El Centro, Cal., for Creditor's Committee of Imperial Feed Products Inc.
Joseph Schmitt, Brawley, Cal., for John A. Morrow Trustee for Imperial Feed Products Inc.

MEMORANDUM OPINION AND ORDER
GORDON THOMPSON, Jr., District Judge.
This matter is presently before the Court on appeal from a Bankruptcy Court decision below denying appellant Berkeley Bank's claim number 62. Jurisdiction is founded upon 11 U.S.C. § 11(a)(10).
The facts of the case are essentially as follows: The Berkeley Bank held certain deeds of trust secured by property owned by Imperial Feed Products', Inc. Sometime prior to Imperial Feed Products' filing its voluntary petition in Bankruptcy, Berkeley Bank moved to record a notice of breach of note and trust deed in the official records of Imperial County. Soon after bankrupt filed its petition, appellant filed its proof of claim by Corporation and claim of lien. Berkeley Bank then filed its application for leave to foreclose praying in part, that the Bankruptcy Trustee abandon the real and personal property *682 and allow the Bank to foreclose. The property was sold for an amount less than the amount of indebtedness at public auction, after the trustee and the Bankruptcy Court had authorized the appellant to sell all the property.
In June of 1972 appellant Bank filed its claim number 62 petitioning the Court to allow the Bank to join the unsecured creditors seeking to share in the general assets to the extent of its deficiency judgment pursuant to 11 U.S.C. § 93(h)[1].
The Trustee objected to this amended claim contending that § 580d of the California Code of Civil Procedure did not allow a deficiency judgment for a secured creditor who forecloses on property mortgaged to him under power of sale contained in the mortgage in a non-judicial foreclosure.[2]
Subsequently on November 29, 1973 the Bankruptcy Judge denied appellant Berkeley Bank's claim stating that the Bank was attempting to do indirectly what it could not do directly and that § 580d did not permit entry of a deficiency judgment by a secured creditor.
The issue therefore presented to this Court is whether the Berkeley Bank as a secured lender fully complied with Section 57(h) of the Bankruptcy Act (11 U.S.C. § 93(h)), so that it is entitled to realize on its security as well as share in the general assets of Bankrupt as to the unsecured balance notwithstanding California Code of Civil Procedure § 580d prohibiting deficiency judgments by secured creditors.
This Court is of the opinion that the decision of the Bankruptcy Court should be affirmed. While there is no question in my mind that § 93(h) may in some cases allow the deficiency judgment, there must be strict compliance with the federal statute.
Appellant Berkeley Bank contends that it fully complied with the federal statute and the property in question was properly valued by means of a public sale. The Bank's reliance is placed on that part of § 93(h) which provides:
". . . shall be determined by converting the same into money according to the terms of the agreement . . . ."
It is their contention that the Bankruptcy Court, pursuant to its summary jurisdiction over bankruptcy proceedings, acted by making the order which allowed Berkeley Bank to determine the value of its security by sale at public auction. Therefore, the valuation requirement was met. This Court does not agree. The "terms of the agreement" would necessarily have contemplated a judicial sale under state law if a deficiency judgment were to be sought.
Appellant does not suggest that the parties contemplated § 93(h) valuation procedures when their initial agreement was formed. Yet the result of their argument is that the agreement which *683 could only have contemplated a state sale where § 580d C.C.P. would apply, satisfies the valuation requirements of § 93(h)[3]. The inconsistency of that result is not acceptable to this Court.
Nor can the Bankruptcy Court's permission to sell be construed as an explicit valuation procedure. This being the case, appellant Berkeley Bank did not adequately comply with the valuation requirement of 11 U.S.C. § 93(h).
Appellant would urge this Court that their rapid sale of the property complied with the "spirit" of § 93(h) which requires the most efficient administration of estates. It may well be true that appellant was attempting to minimize costs[4] but strict compliance is necessary to prevent a secured creditor from unfairly reaping the benefits of his security while taking dividends from the funds of the unsecured creditors.
There is no doubt that this Court has placed a strict construction upon the requirements of § 93(h) but I feel constrained to do so given the strong policy considerations for anti-deficiency legislation in the State of California. See Brown v. Jensen, 41 Cal.2d 193, 259 P.2d 425 (1953).
While keeping in mind the federal pre-eminence in this area of the law, it should be noted that a prime purpose of the Bankruptcy Act is to provide a measure of protection and certainty for the debtor. See e. g., Sen.Doc.No.65 (1932) pp. xi, xii. This interpretation would in no way be enhanced by denying the debtor a financial remedy or courtesy available to him under the laws of his own state.
In a general review of the history of the Bankruptcy Act, this Court discovered that a primary objective of the Chandler Act[5] was "to build up, as far as feasible and equitable, the residual fund for distribution among the general unsecured creditors".[6] By not requiring strict compliance with § 93(h) on the part of appellant Berkeley Bank, the general fund of the unsecured creditors is unnecessarily diminished.
Therefore, it is the ruling of this Court that the decision of the Bankruptcy Court, denying appellant's claim is hereby affirmed.
It is so ordered.
NOTES
[1] (h) The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court. 11 U.S.C. § 93(h).
[2] § 580d:

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.
The provisions of this section shall not apply to any deed of trust, mortgage or other lien given to secure the payment of bonds or other evidence of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or which is made by a public utility subject to the provisions of the Public Utilities Act.
Cal.Civ.Pro.Code § 580(d) (West 1955).
[3] Appellant cites In re Pennyrich International, Inc. of Dallas, 473 F.2d 417, 422 (5th Cir. 1973) for the proposition that the agreement allowing the private sale of the property satisfies the valuation requirement of § 93(h).

In that case a creditor of the bankrupt produced certain industrial promotion films and was unable to collect payment before bankruptcy. There was a question of valuation and there was no agreement, such as a deed of trust or mortgage to specify what would happen if default of payment occurred. Furthermore, there was a controversy concerning whether the creditor was indeed secured or not. After determining the creditor was secured, the Court discussed the problems of valuation. No authority was cited for their position that the agreement satisfied § 93(h). It appears to this Court that it was only dicta, not controlling in the present case.
While this case is one of first impression, language from In re Pennyrich International, Inc. of Dallas, supra, a decision which can easily be factually distinguished, should not dictate a result so contrary to California law, infra.
[4] Berkeley Bank's brief stated that there was a general economic deterioration in the alfalfa industry and the bankrupt's lands were suffering a steady decline in value.
[5] The Act of June 22, 1938, commonly known as the Chandler Act, is an Act amendatory of the Act of 1898, as amended. Since it is extremely extensive in character it is often referred to for convenience as the Bankruptcy Act of 1938. Collier On Bankruptcy, Vol. 1 § 0.07 p. 17 (14th Ed. 1971).
[6] Weinstein, Amendments to the Bankruptcy Act as Proposed and Pending Before the Congress (1950) 24 J. of National Assn. of Ref. 28, 32.