**In re Marsha B. MILLER, Debtor.**

**FORD MOTOR CREDIT, Plaintiff,**

v.

**Marsha B. MILLER, Debtor and Harry W. Heid, Trustee, Defendants.**

**Bankruptcy No. 79–0009–P.**

United States Bankruptcy Court, S. D. California.

June 6, 1980.

Jean Leonard Harris by Robert E. Gallatin, San Diego, Cal., of counsel for Ford Motor Credit.

George Ritner, San Diego, Cal., for debtor.

Harry W. Heid, Chapter 13 Trustee, pro se.

## MEMORANDUM OF DECISION

ROSS M. PYLE, Bankruptcy Judge.

On December 12, 1979, Ford Motor Credit Company (hereinafter referred to as "Ford") filed its Complaint for Reclamation and for Relief From Stay against Marsha B. Miller, the Debtor herein, and Harry W. Heid, Chapter 13 Trustee. Ford holds a claim against the Debtor secured by a 1979 Pinto. In its complaint, Ford prays in the alternative for (1) repossession of its collateral, (2) modification of the Debtor's plan to provide to Ford monthly payments equivalent to those provided in the original contract, or (3) that the fair market value of the Pinto be set at $4,780.00, and that current preferred interest rates be paid.

This matter came on for an evaluation hearing pursuant to 11 U.S.C. § 506.

## FACTS

The parties stipulated to the following facts:

1. The Debtor on May 25, 1979, contracted for the purchase of a new 1979 Ford Pinto Sedan.

2. The contract obligated the Debtor to make monthly payments to Ford of $136.62 in 48 monthly installments commencing on July 9, 1979. The total amount financed by Ford was $4,938.70 and the interest rate was 14.35% per annum.

3. The Debtor submitted monthly payments to Ford for the months of July, August and September, 1979. Since then, no payments have been made.

4. The Debtor filed for relief under Chapter 13 on November 1, 1979.

5. The Debtor's plan proposed that Ford's allowed secured claim be established at $4,300.00, that interest be set at 10% per annum and that monthly payments to Ford be set at $105.00.

6. Ford rejected the proposed plan on November 30, 1979, and filed its Complaint for Reclamation and for Relief from Stay.

7. The Debtor's plan was confirmed by the Court on December 26, 1979.

8. The Kelly Blue Book accurately reflects the value of the subject automobile at $4780.00 retail and $3650.00 wholesale.

9. Ford's Proof of Claim at $4,855.42 is greater than the value of the Pinto, leaving Ford partially unsecured. The Debtor's plan provides only a 1% payment upon the unsecured portion of the claim.

## DISCUSSION

### I

The initial question before the Court is the appropriate value of the subject automobile.

11 U.S.C. § 506(a) provides that the value of collateral " . . . shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ."

Legislative history indicates that the concept of value is to be flexible. Courts are given the discretion to determine value on a case by case basis, taking into account the facts and the competing interests in each case. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787; S.Rep. No. 989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Here, the Debtor wishes to retain the automobile. She is accustomed to its idiosyncracies and merits, and, like most people prefers a known quantity to the unknown.

The vehicle to Ford is merely another economic unit, with its only value upon repossession being measured by how readily and to what extent it can be converted to cash. That value is approximated by the Kelly Blue Book wholesale value of $3,650.

Under these circumstances both parties are in substantial agreement that the correct valuation of the collateral is the replacement cost to the Debtor.

What, then, is replacement value?

Ford contends that the average retail price of $4780 announced in the Kelly Blue Book is the appropriate replacement value. Ford bases this contention upon the assertion that this is what the Debtor would have to pay if she purchased a similar automobile from a dealer.

The Debtor urges that a value between the Kelly wholesale and retail value is both a fair and realistic approximation of the car's replacement value.

This Court agrees with the Debtor.

The spread of $1,130 between the wholesale and retail figures which is the stipulated range of value is easily explainable. The low figure reflects the cash amount a dealer can realize on the wholesale market. The higher end of the spectrum is what a consumer would pay to a dealer. The difference reflects the overhead, sales commissions, advertising, other costs of sale, and some percentage of profit a dealer must charge in order to stay in business.

There is, however, another market available to the consumer that is not directly reflected in Kelly's Blue Book. That is the open market between private parties. The Court is of the opinion that the median value between retail and wholesale values would most accurately approximate that open market value as private parties ordinarily do not have costs of sale built into their selling price.

The value urged by the Debtor of $4,300.00, therefore, is the appropriate value to be fixed as the allowed secured claim under 11 U.S.C. § 506.

## II

■ 11 U.S.C. § 1325(a)(5) requires that the holder of an allowed secured claim accept a debtor's Chapter 13 plan or be dealt with in one of two ways. Since the Debtor here does not want to surrender the vehicle, the first method provided by § 1325(a)(5), we must turn to the second method. § 1325(a)(5)(B) provides that a plan may be confirmed over the objection of a holder of a secured claim if:

"(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim, . . . ."

The second issue then before the Court is what Ford's $4,300 allowed secured claim is worth discounted over the life of the Debtor's plan.

One method to equate the present value of deferred future payments with the value of an allowed secured claim is to pay interest on the amount of the claim at an interest rate which is equivalent to the discount rate for the length of the plan. [5 *Collier on Bankruptcy* ¶ 1325.01(3)(b)(ii) (15th Ed. 1979)]; also see *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935) for the proposition that the "indubitable equivalent" of present cash is increased interest.

If the Court were to determine a precise discount rate expert testimony would be necessary. Such could take an inordinate length of time, and given the current fluctuation in interest rates, experts undoubtedly would hold differing opinions on the subject. In any event, no evidence on the subject was presented.

As stated above, the wholesale Kelly Blue Book value of $3,650.00 is the assumed cash amount an automobile dealer would realize if the automobile was repossessed and wholesaled for immediate cash. Since the Debtor prefers not to return the collateral to Ford, Ford is deprived of that cash. The cost to Ford of obtaining that money elsewhere would undoubtedly be at least the prevailing prime interest rate.

However, as the Court has valued the collateral higher than the wholesale value, Ford is realizing more by this valuation than it would by repossession and liquidation of the collateral. Therefore, the reason for equating the discount rate with the prime interest rate as Ford urges, is lost. Equitably, a lower rate should suffice.

## CONCLUSION

Under the circumstances of this case, the Court agrees with the statement of Judge Kelley in the case of *In re Lum*, 1 B.R. 186, 188 (Bkrtcy.E.D.Tenn.1979) that "[t]he Court's determination can at best be a rough approximation." Based on the foregoing, the Court finds that the appropriate discount or interest rate in the instant case is 12% per annum.

The debtor will pay to plaintiff the sum of $4,300 upon its allowed secured claim together with simple interest thereon at the rate of 12% per annum, payable in equal monthly installments amortized over the remaining length of the debtor's plan.

The foregoing shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.

The attorney for the debtor shall prepare an appropriate order within ten (10) days.