**In re Donald Joseph JONES, Mary Francis Jones, Debtors.**

**VIRGINIA NATIONAL BANK, Plaintiff,**

**v.**

**Donald Joseph JONES, and Mary Francis Jones, Defendants.**

**Bankruptcy No. 80–00428.**

United States Bankruptcy Court,
E. D. Virginia,
Norfolk Division.

Sept. 4, 1980.

Alexander P. Smith, Smith & Owens, Norfolk, Va., for debtors.

Stuart D. Glasser, Glasser & Glasser, Norfolk, Va., for Virginia Nat. Bank and David R. Levin, Portsmouth, Va., Trustee.

HAL J. BONNEY, Jr., Bankruptcy Judge.

Quite simply, by what standards shall property be valued, pursuant to 11 U.S.C. 1325(a)(5)(B)(ii), when the Chapter 13 debtor seeks to deal with secured creditors in the plan?

Since the effective date of the Bankruptcy Code, October 1, 1979, perhaps more judicial decisions have been required in Chapter 13 proceedings than in any other. A vastly new bankruptcy philosophy here exists. The decisions have generally been of two natures: (1) those involving vital substantive issues such as "good faith" and (2) the mechanics of applying the provisions of the Chapter.

This case is engendered by the latter.

The new Chapter 13 allows the debtor to subjugate [vulgar: "cram–down"] a secured creditor to the terms of the plan, even against the creditor's will, but only upon certain terms or conditions.

(a) The court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and 11 U.S.C. 1325(a)(5)

In effect, there are three alternatives:

(A) The creditor is satisfied with the terms of the plan and accepts it.

(C) [out of order] The debtor does not wish to retain the property and surrenders it to the creditor.

(B) The debtor wishes to retain the property and pay the creditor what he must. Until the provisions dealing with the secured creditor are consummated, the creditor retains the lien upon the property. Further, he must receive the value of the property. The balance, the unsecured portion, would be paid in accordance with the plan's provisions for general, unsecured creditors. While not in issue here, the secured creditor is entitled to the value *as of the effective date of the plan*. Since the plan is usually tailored to three years and the secured creditor will not receive the value immediately, he is entitled to interest on the present value.

That is how it works.

Again, the issue here is *value*. What is the value? Is it retail or wholesale? Is it fair market value? Is it the value at a 'distressed' sale?

In this instant case, the debtor has a 1979 Dodge Aspen upon which Virginia National Bank has a lien with a net unpaid balance outstanding of $5,193.55. In the plan the debtors set the value of the vehicle at

$3,100; the bank filed an objection to confirmation.

An entire spectrum of values was admitted into evidence at the confirmation hearing:

| | |
|---|---|
| Debtor | $3,100 |
| Chapter 13 Trustee | 4,150 |
| Official Court Appraiser | 2,850 |
| Bank's Appraiser | |
| Trade in | 3,125 |
| Loan | 2,825 |
| Retail | 3,825 |

Let it be said that the parties are reasonable. Indeed, the bank asks for guidelines for future reference under the new approach.

Verily, it is preferable for the parties, reasonably and realistically, to agree upon such matters as the secured portion of a debt. True value is an elusive Pimpernel. The parties' discretion may be as good as the Court's.

As the bank points out, we are guided in the Code by section 506.

Valuation of Property Under § 506

Section 506 of the Bankruptcy Code provides that a secured creditor has a secured claim to the extent of the value of the property. "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest". Subsection (a)

The statutory language offers less than specific guidance on the question. However, the legislative history indicates that the concept of value is to be flexible. The Congress intended and the courts are given the discretion to determine value on a case by case basis, taking into account the facts and the competing interests in each case. H.R.Rep.No.595, 95th Cong., 1st Sess. 356 (1977); S.Rep.No.989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Several factors must be considered in any determination of value. The date of valuation is certainly important. Also of critical importance is the section of the economy in which the property is to be valued.

One of the persistent problems of remedial law, and the issue is of moment here, is the perspective through which to measure value or damages. Should one use replacement cost to the debtor? Realizable price to the creditor? An average of the two? Retail value? Through which specific framework of analysis should the Court determine value?

In *In re Adams*, 2 B.R. 313, 5 BCD 1234 (Bkrtcy.M.D.Fla.1980), the Court held that wholesale value (not retail) was appropriate. The Court based the decision in large part upon the nature of the creditor's business. In this case the creditor was a credit union. Since the credit union was not in the business of selling cars it could not dispose of the car on the retail market. Rather, it would sell the car at wholesale to a retailer. Thus wholesale price is appropriate.

Two critical questions arise out of this analysis. First, is value to be determined with reference to the nature of the creditor's business rather than to the collateral? Second, is retail value ever an appropriate measure of value since it includes elements of overhead, sales commission, advertising expenses, profit, etc.?

The case of *In re Miller*, 4 B.R. 392, 6 BCD 410 (Bkrtcy.S.D.Cal.1980), stands for the proposition that replacement cost to the debtor is the appropriate measure of value. The Court notes that retail value is inappropriate in that it represents the value of the item plus incidental costs and profit. The Court takes the open market between private parties as the proper reference point.

Private parties ordinarily do not have cost of sale built into their selling price nor does the price reflect the summary disposition of property as at wholesale. This price will be a median between wholesale and retail value.

*In re Savloff*, 4 B.R. 285, 6 BCD 349 (Bkrtcy.E.D.Pa.1980), entails valuing the collateral by applying the norm which a prudent businessman would employ to dis-

pose of an asset. This is a strong case, one utilizing Section 9–504(3) of the Uniform Commercial Code and citing that pertinent language, "the most commercially reasonable disposition practicable under the circumstances."

The standard of value enunciated in the *Savloff* case appears consistent with that propounded in *Miller*. Both look to commercially reasonable sales which do not reflect an excessive amount of overhead or profit. This appears to be the alternative most consistent with the statutory language and will probably provide an accurate indicia of value. In any event, a case–by–case application of this standard is called for. See also *In re Pennyrich, Inc. of Dallas*, 473 F.2d 417 (5th Cir. 1973); Cf. *In re Imperial Feed Products, Inc.*, 375 F.Supp. 681 (S.D. Cal.1974).

The date of valuation is also of importance. The only Code case on point, *In re Adams, supra,* holds that the date of valuation is the date of filing of the petition for bankruptcy. This inflexible timing of the date of valuation does not take into account prospective changes in the value of the property during the course of administration, nor does it comport with the standard enunciated in the *Savloff* case.

As Judge Cyr stated in *In re American Kitchen Foods, Inc.*, 2 BCD 715 (N.D.Me. 1976), at page 722 "[C]onsistency in collateral valuation does not mean that collateral will be assigned the same value throughout the proceedings as at their commencement, but merely that the most commercially reasonable disposition practicable in the circumstances should be the standard universally applicable in all cases and at every phase of each case." Under this view, value is not to be determined as of the date of filing but on the date proceedings calling for the value of specific collateral are initiated. This provides the Court with the flexibility implicit in the statute. It also contemplates a valuation at or near the time of the litigation with regard to the property, thus providing the Court with a more complete factual basis to resolve the dispute.

The retail value of $3,825 which the bank urges is the value placed upon the vehicle by the bank's witness, a used car dealer. It is the price, including overhead and profit, the vehicle would most likely bring at retail on the lot. Under cross examination, he agreed that bargaining could reduce the price, yet this was a particularly desirable car.

But this is not the usual method the bank uses, commercially, to dispose of cars.[1] Nor does the bank use this dealer. The senior credit manager testified that the bank seeks at least three (3) bids from individual dealers and takes the highest.

The Court is of the opinion that the vehicle here is worth $3,600. This shall be the secured amount. The bank shall retain its lien until paid, and the vehicle shall be properly insured. Since the statute speaks of value as of the effective date of the plan, 11 U.S.C. 1325(a)(5)(B)(ii), the secured creditor is entitled to interest on the $3,600. The original contract rate was 12.67% and at the time of trial on this issue the bank was charging 14.34% interest; the prime rate at the moment, was 12%. The Court allows the contract rate of 12.67%.

Pursuant to subsection (b) of 506, the bank seeks $100 for attorney's fee, $50 for reviewing the matter and $50 for the Court appearance. The Court is of the opinion that $50 is here reasonable.

### Guidelines

The wisest guideline would direct the parties to realistically agree on the valuation. This should be done at the meeting of creditors so that the trustee can accurately compute the total amount necessary to support the plan. While the Court can establish the amount and will if requested, it must be said that such disputes, in most instances, are a waste of time for everyone and a waste of the clients' money. There are more important matters than this petty bit.

---

1. The fact that the bank has recourse paper with the selling dealer is of no moment to this determination. Before it resorts to the dealer, it should obtain the most it can.

The valuation is neither the amount which could be realized at a distress sale nor the on–the–lot, in–the–store retail figure. It is the amount which could be realized in a commercially reasonable manner.

With this and a percentage of the unsecured portion, a secured party will do better than through an out–and–out repossession.

IT IS SO ORDERED.