**In the Matter of Gary B. ROGERS, Sarah L. Rogers, Debtors.**

**Bankruptcy No. 80–756–C.**

United States Bankruptcy Court, S. D. Iowa.

Sept. 10, 1980.

Gary R. Hassel, Des Moines, Iowa, for debtors.

Richard G. Book, Des Moines, Iowa, for GMAC.

Joseph W. Warford, Des Moines, Iowa, trustee.

## MEMORANDUM OF DECISION AND ORDER DENYING CONFIRMATION

RICHARD STAGEMAN, Bankruptcy Judge.

At Des Moines, in the Southern District of Iowa, on the 10th day of September, 1980.

This matter is before the Court in a Chapter 13 case. General Motors Acceptance Corporation ("GMAC") filed an objection to the confirmation of the debtors' plan. GMAC alleges that it has a secured claim that was not given a fair value in the debtors' plan.

GMAC also filed a proof of claim for $6,154.68. The proof of claim contains a rejection of the debtors' plan. Annexed to the proof of claim is a copy of an installment sale contract for the sale of a 1979 Buick Century motor vehicle. Gary B. Rogers is the buyer and GMAC's assignor, the seller. The contract's deferred payment price is $9,612.66 including interest computed at an annual rate of 13%. Other material charges included are a premium for credit life insurance, $175.22, and a warranty protection plan, $223.00. The installment payments are $246.18 a month for thirty–five months with a final payment of $246.36.

GMAC is by far the largest creditor. The debtors' plan provides that the debtors will pay the trustee $300.00 a month, and a projected 98% dividend to unsecured creditors after the secured claims are satisfied in full.

The parties have agreed that the value of the 1979 Buick should be fixed at $4,800.00.

GMAC first argues that its allowed secured claim should include the unearned premium of the credit life insurance policy,

and the unearned contract charge for the extended warranty protection plan.

GMAC then argues that the plan cannot be confirmed because, as regards its claim, the plan does not comply with 11 U.S.C. § 1325(a)(5)(B)(ii).

If a debtor's plan meets all the requirements of 11 U.S.C. § 1325(a), it must be confirmed.

Title 11 U.S.C. § 1325(a)(5) permits the debtor to treat with secured claims (other than a mortgage on the debtor's residence) by three means: convince the secured creditor to accept the plan (GMAC has rejected it); recognize the secured creditor's lien and provide that the creditor receive property for that lien equal to its "value," as of the effective date of the plan; or surrender the collateral to the secured creditor. Since the debtors here wish to retain GMAC's collateral, they must satisfy the requirements of the second alternative. 11 U.S.C. § 1325(a)(5)(B)(i), (ii).

GMAC does retain its lien so 11 U.S.C. § 1325(a)(5)(B)(i) presents no issue.

Before the "value" can be determined the allowed amount of the claim must be fixed. The allowed amount of the claim is governed by 11 U.S.C. § 506(a). H.Rept.No. 95–595, 95th Cong., 1st Sess. (1977) p. 430, U.S. Code Cong. & Admin. News 1978, p. 5787. Title 11 U.S.C. § 506(a) provides that a creditor's allowed claim is secured to "the extent of the value of such creditor's interest in the estate's interest in such property."

The question is whether that value includes the unearned credit life insurance premium, and unearned extended warranty protection charge.

Title 11 U.S.C. § 506(b) only permits a secured claim to include reasonable fees, costs, or charges provided in the agreement under which a claim arises where the value of the collateral exceeds the amount of the underlying claim.

■ The unearned credit life insurance premium is not collateral securing GMAC's installment sale loan.

■ Article 9 of Iowa's Uniform Commercial Code ("UCC") does not apply to a transaction involving an unearned life insurance premium. Section 554.9104, *Code of Iowa* (1979) excepts from the operation of Article 9 of the UCC, "[A] transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (section 554.9306) and priorities in proceeds." "Proceeds" is defined in Section 554.9306(1), *Code of Iowa* (1979), and regarding insurance, states, "Insurance payable by reason of loss or damage to the collateral is proceeds, . . . ." The terms of this definition apply only to a casualty insurance policy not a life insurance policy.

If the UCC does not apply, GMAC cannot create a security interest in the unearned credit life insurance premium unless an interest can be established under some other statute or the common law.

The only statute of Iowa that deals with insured chattel loans simply requires that upon satisfaction of the debt an unearned premium be refunded. Section 536.26, *Code of Iowa* (1979).

■ The common law of Iowa does recognize assignments of contract rights.
No special form of words is necessary to effect an assignment, in the absence of statutory provisions prescribing a particular mode or form. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it will be sufficient to vest the property in the assignee.

*Petty v. Mutual Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613, 618 (1944). See *Briley v. Madrid Improvement Co.*, 255 Iowa 388, 122 N.W.2d 824 (Iowa 1963). There is absolutely nothing in the installment sale contract that shows any intention of the parties that upon cancellation of the credit life insurance contract the unearned premium belonged to the seller either by assignment of the policy itself or the right to a refund. GMAC was not the insurer, Bankers United Life Assurance Company was. GMAC simply loaned the debtor the funds to pay the premium which in and of

itself gave them nothing more than the right to have the loan repaid.

■ GMAC does not have a security interest in the unearned extended warranty charge.

The charge for the extended warranty protection is an "other charge" or "additional charge" as authorized by Iowa's Consumer Credit Code. Section 537.2501(2)(a) & (b), *Code of Iowa* (1979). Such additional charges are not included in the "finance charge," Section 537.1301(20)(b)(2), *Code of Iowa* (1979), but may be included in the "amount financed." Section 537.1301(5), *Code of Iowa* (1979). See Sections 322.-3(6)(b), 322.19, and 322.33, *Code of Iowa* (1979).

■ The right to the refund yet unearned would be a "general intangible" under the UCC, Section 554.9106, *Code of Iowa* (1979). In order to obtain a security interest in any property under the UCC, including general intangibles, the security interest must attach. A security interest does not attach to collateral that is not described in the security agreement (the installment sale contract). Section 554.-9203, *Code of Iowa* (1979). The purpose of the requirement is to minimize disputes between parties over whether an item of collateral is covered by the agreement. *In re Laminated Veneers, Inc.*, 8 UCC Rep.Ser. 602 (E.D.N.Y.1970).

The installment sale contract grants the seller a security in the "property described above and any proceeds." The only property "described above" is the "New 79-V6 Buick Century," nothing more. The "proceeds" refers to proceeds under the UCC as, "whatever is received upon the sale, exchange, collection or other disposition of the collateral or proceeds." Section 554.9306, *Code of Iowa* (1979).

The "description of the security interest" in the installment sale contract (para. 12) does not "reasonably identify" by description a refund of the unearned charge for the extended warranty plan. See Section 554.9110, *Code of Iowa* (1979).

GMAC is entitled to have the value of its secured claim determined as of the effective date of the plan. It is also entitled to the present value of the property to be distributed to it under the plan, 11 U.S.C. § 1325(a)(5)(B)(ii). In other words, the allowed amount of the Chapter 13 secured claim must represent its present value equivalent if the plan providing for payment of the claim is to be forced on the creditor.

The present value of such claim is the amount the creditor would realize if he had in his hands the principal amount which is due and owing as of the effective way which produces a return on his investment for a period equal to the extension proposed in the debtor's plan . . . .

*In re Smith*, 2 CBC2d 77, 79, 4 B.R. 12 (Bkrtcy.E.D.N.Y.1980). The extension period is normally thirty six months. 11 U.S.C. § 1322(c).

The simplest way to compute present value is to pay interest on the amount to be deferred for three years, that is, establish a discount rate. *In re Miller*, 2 CBC2d 212, 4 B.R. 392 (Bkrtcy.S.D.Cal.1980); 5 Collier on Bankruptcy ¶ 1325.01(3)(b)(ii), pp. 1325–26 (15th ed. 1979).

A determination of a proper discount rate could become a very complex matter. *In re Miller, supra.* In order to simplify this Congress has suggested that there should be a presumption that a proper discount rate would be the same as the rate set out in the parties' interest bearing agreement. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 352–53 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787; S.Rep.No. 95–989, 95th Cong., 1st Sess. 62–63 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787.

■ The annual contract interest rate of 13% in this case is within the limits allowed under Iowa law for governing motor vehicle installment sales transactions. Section 322.19, *Code of Iowa* (1979). A discount rate of 13% would be reasonable in this case.

The plan in this case does not propose to give GMAC the present value equivalent of

the allowed amount of its secured claim of $4,800.00. Confirmation should be refused.

It is so ORDERED.