**In re David KLEIN and Jane Klein, Debtors.**

**Bankruptcy No. 880–04208.**

United States Bankruptcy Court,
E. D. New York.

April 15, 1981.

Donner, Fagelson, Hariton & Berka, P. C., Bay Shore, N. Y., for debtors.

Murov & Ades, Lindenhurst, N. Y., for GMAC.

Kenneth Kirschenbaum, Garden City, N. Y., Trustee.

C. ALBERT PARENTE, Bankruptcy Judge.

On July 23, 1980, David and Jane Klein (hereinafter "debtors") filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code. At the confirmation hearing held on November 18, 1980, the Court held a valuation hearing with respect to the partially secured claim held by General Motors Acceptance Corporation (hereinafter "GMAC").

A summary of the pertinent facts elicited at the hearing held on November 18, 1980, follows.

(1) On October 18, 1979, the debtors purchased a 1976 Chevrolet Caprice station wagon for the sum of $3,735.25. The debtors financed said purchase by placing a cash down-payment in the sum of $1,335.25 and executing a consumer credit contract with GMAC in the amount of $3,244.68.

(2) The debtors, in their Chapter 13 petition, listed GMAC's claim as secured in the amount of $1,394.86 and unsecured in the amount of $1,759.69. The debtors fixed the value of the collateral in question at $1,394.86.

(3) Consistent with the debtors' listing of GMAC's claim in the petition, the plan provided for the full payment of GMAC's secured claim plus a discount rate of 12 percent over the term of the plan. The plan further provided for payment of 18 percent of the unsecured portion of GMAC's claim.

(4) On September 4, 1980, GMAC filed a proof of claim in the sum of $3,286.74 and rejected the debtors' plan.

(5) On November 5, 1980, the debtors submitted an amended plan increasing the value of GMAC's secured claim to $1,650.

(6) At the valuation hearing, the expert witness for the debtors, Angelo Merolla, set the wholesale value of the car at $1,100 and the retail value at $1,600. The expert witness for the creditor, Paul Dombrowski, set the wholesale value at $1,850 and the retail value at $2,475.

(7) As of the date of this decision, the debtors' amended plan has not been confirmed.

The above findings of fact give rise to the following issues:

(1) Pursuant to 11 U.S.C. Section 506(a), what method of valuation should be used to fix a secured claim where the collateral consists of an automobile.

(2) Pursuant to 11 U.S.C. Section 1325(a)(5)(B)(ii), as of what date should a secured claim be valued.

(3) What is the appropriate discount rate to be paid on GMAC's secured claim in the case at bar.

I.

■ Section 506 of the Bankruptcy Code provides that a creditor has a secured claim to the extent of the value of the collateral. 11 U.S.C. Section 506(a); *In re Jones*, 5 B.R. 736, 6 B.C.D. 965 (Bkrtcy.E.D.Va.1980); *In re Cooper*, 7 B.R. 537, 7 B.C.D. 24 (Bkrtcy. N.D.Ga.1980).

■ Where the collateral securing the creditor's claim is valued less than the face amount of the claim, as in the case at bar, the creditor's claim is divided into two parts: an allowed secured claim which is equal to the value of the collateral and an allowed unsecured claim for the deficiency. H.R.Rep. No. 95–595, 95th Congr., 1st Sess., at p. 356 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787; *In re Jones, supra; In re Anderson*, 6 B.R. 601, 6 B.C.D. 1155 (Bkrtcy.S.D.Ohio 1980).

Although Section 506(a) sets forth general principles for the courts to follow when called upon to determine the value of a creditor's secured claim, the statutory language does not offer specific guidelines on the question. *In re Jones, supra*. The statute is extremely flexible and states simply that "(s)uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. Section 506(a).

■ The legislative history, while equally as general as the statutory language of

Section 506(a), does indicate that the concept of value is to be flexible and grants discretion to the courts to determine value on a case-by-case basis, taking into account the facts and competing interests in each case. H.R.Rep. No. 95–595, 95th Congr., 1st Sess., at p. 356 (1977); *In re Jones, supra.*

A review of the reported decisions on the issue presented indicates that there are two basic approaches that the courts have followed in determining the value of a secured creditor's claim under Section 506(a):

(1) Where the collateral sought to be valued is an automobile, a majority of the courts have rejected the creditor's claim that the value of the automobile should be set at the retail price unless the creditor was in the business of selling cars in the retail market. The courts found the wholesale price to be the appropriate measure of value. *See: In re Adams*, 2 B.R. 313, 5 B.C.D. 1234 (Bkrtcy.M.D.Fla.1980); *In re Crockett*, 3 B.R. 365 (Bkrtcy.N.D.Ill.1980).

(2) The second approach followed by the courts entails valuing the collateral by applying the norm which a prudent businessman would employ to dispose of an asset. This approach is derived from Section 9–504(e) of the Uniform Commercial Code, which provides in relevant part that: "(s)ale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable.*" (Emphasis added)

This approach rejects the formulation of a definitive method of valuation to be used in all cases. Rather, the method of valuation is to be determined on a case-by-case basis. *See: In re Savloff*, 4 B.R. 285, 6 B.C.D. 349 (Bkrtcy.E.D.Pa.1980); *In re Miller*, 4 B.R. 392, 6 B.C.D. 410 (Bkrtcy.S.D.Cal. 1980); *In re Jones, supra; In re Cooper, supra*; Section 9–504(3) Uniform Commercial Code (McKinney Supp.1980).

■ Predicated on the statutory mandate that the value of the collateral should be determined in light of the proposed disposition or use of such property and Congress's intent that the concept of value is to be flexible, the Court finds that the car in question should be valued at an amount which the creditor would receive by its customary or commercially reasonable means of disposition. Such an approach appears to be the alternative most consistent with the statutory language. *In re Jones, supra.*

At the valuation hearing, Paul Dombrowski, an employee of GMAC, testified as to GMAC's procedure for disposing of abandoned and repossessed cars. Dombrowski stated that said cars are sold on a "bid" market. Although Dombrowski did not elaborate on this method of sale, it is evident that this procedure clearly contemplates a wholesale market value as opposed to a retail or forced-sale (liquidation) market value.

Predicated on the aforementioned discussion, the Court concludes that the car in question should be valued at an amount which could be realized by GMAC in their normal manner of disposing of such vehicles, to wit, on a bid market. Thus, the value of the debtors' car is hereby affixed at $1,650.

## II.

The debtors contend that the controlling date for valuation is the date the Chapter 13 petition was filed. In contra-position, GMAC contends that the relevant date is the date of the valuation hearing.

Pursuant to 11 U.S.C. Section 1325(a)(5)(B)(ii), the value of the collateral establishing the amount of the secured claim is to be determined as of the "effective date of the plan." *See, e. g., In re Smith*, 4 B.R. 12, 2 C.B.C.2d 77, 78 (Bkrtcy. E.D.N.Y.1980).

Neither the Bankruptcy Code nor the legislative history defines the term "effective date of the plan." The reported decisions indicate that the "effective date of the plan" is one of two dates: either the date the petition is filed, *see: In re Adams, supra*; or the date of the confirmation hearing, *see: In re Crockett, supra; In re Busman*, 5 B.R. 332 (Bkrtcy.E.D.N.Y.1980); *In re Smith, supra.*

The Court rejects the proposition that the date of valuation is the date of the filing of the Chapter 13 petition. This finding posits on the fact that setting the valuation date coordinate with the date the petition is filed does not take into account prospective changes in the value of the property which may occur during the course of administration. *See: In re Jones, supra.*

For the purposes of cram down valuation, the Court will determine the value of the collateral as of the date of the valuation hearing, since, as a practical matter, confirmation will almost always follow within a brief time after this hearing. *See, In re Jones, supra;* 5 Collier on Bankruptcy, 15th Ed., Section 1325.01 at p. 1325–23.

■ In comport with the foregoing principles of law, the Court finds that the proper date to value a secured creditor's collateral is the date of the valuation hearing, provided that the plan is confirmed within a reasonable time thereafter.

However, in situations such as the case at bar, where a significant period of time has passed since the date of the valuation hearing, adjustments should be made for any increase or decrease in value which may have occurred during this time.

### III.

■ Under the language of the Chapter 13 "cram down" provisions, the creditor must receive the present value equivalent of the allowed amount of its secured claim. 11 U.S.C. Section 1325(a)(5)(B)(ii); *In re Busman, supra; In re Smith, supra.*

■ To compute the "present value" of a creditor's secured claim requires the Court to determine what the present worth is of a proposed stream of fixed payments over the life of the plan. *In re Hyden,* 10 B.R. 21, 6 B.C.D. 1392 (Bkrtcy.S.D.Ohio 1980). To accomplish this task, the payments are "discounted" to determine their present value. *In re Hyden, supra.* As a practical matter, the Court is in effect computing an interest rate to be applied to the amount of the creditor's allowed secured claim. *In re Rogers,* 6 B.R. 472, 6 B.C.D. 1214 (Bkrtcy.S. D.Iowa 1980).

However, such discount rate embodied in Section 1325(a)(5)(B)(ii) should not be confused with a creditor's right to interest on its secured claim under Section 506(b). *See: In re Hyden, supra.*

■ For purposes of fixing the value of a creditor's secured claim, Section 506(b) permits the secured claim to include reasonable interest together with any reasonable fees, costs or charges provided for in the security agreement when the value of the collateral exceeds the amount of the allowed secured claim. 11 U.S.C. Section 506(b); *In re Smith, supra; In re Rogers, supra.*

The discount rate, on the other hand, does not become part of the secured claim, but is instead incremental adjustments to the secured claim to compensate the creditor for depreciation of the collateral over the term of the plan. *In re Crockett, supra; In re Cooper, supra.*

While the Bankruptcy Code is silent as to the value of the discount rate, the legislative history indicates there is a presumption that the discount rate and the interest rate set forth in the contract are equivalent. *See: In re Smith, supra;* H.R.Rep. No. 95–595, 95th Congr., 1st Sess., at pp. 352–353 (1977); *In re Rogers, supra.*

Despite the presumption set forth in the legislative history, most of the reported decisions have declined to fix the discount rate at the interest rate stated in the security agreement. *See: In re Lum,* 1 B.R. 186, 1 C.B.C.2d 95 (Bkrtcy.E.D.Tenn.1979); *In re Weaver,* 5 B.R. 522, 2 C.B.C.2d 315 (Bkrtcy. N.D.Ga.1980); *In re Hyden, supra.* The rationale cited in the reported decisions is that the purpose of the discount rate is to protect the secured creditor from any loss caused to it due to the deferred payment of its claim. *In re Lum, supra; In re Weaver, supra.* It is not the purpose of the discount rate to produce a lender's profit. *In re Lum, supra; In re Weaver, supra.*

■ Therefore, predicated on the aforementioned principles of law, the Court declines to fix the discount rate at the interest rate set forth in the consumer credit con-

tract, to wit, 19.56 percent. GMAC failed to adduce any evidence to demonstrate that the value of the car in question would depreciate by 19.56 percent over the life of the plan. To fix the discount rate in the case at bar at 19.56 percent would violate the mandate that the determination of the value question in issue must be made to reach a result that is fair and equitable for both the creditor and the debtor. *See: In re Hyden, supra.*

Absent evidence to the contrary, the Court finds that the method of calculating the discount rate which best comports with legal and equitable considerations found in the Bankruptcy Code, the legislative history and the reported decisions is to take the average of the legal rate of interest in the State of New York (6 percent) and the rate of interest set forth in the consumer credit contract (19.56 percent).

In light of both legal and equitable considerations, the Court fixes the discount rate in the case at bar at 12 percent.

CONCLUSION

Premised on the aforementioned findings of fact and principles of law, the Court concludes:

(1) the proper method of valuation in the case at bar is the amount which GMAC would realize by its normal means of disposing of such collateral, *i. e.*, commercially reasonable means;

(2) the value of the collateral in question is set at $1,650;

(3) the collateral of GMAC is to be valued as of the date of the valuation hearing; and

(4) GMAC is entitled to a discount rate on its secured claim in the amount set forth in the debtors' amended plan, 12 percent.