**In re James Wesley ROE, Merna Nagley Roe, Debtors.**

**Bankruptcy No. 80–21196.**

United States Bankruptcy Court, D. Kansas.

Sept. 30, 1981.

Henry W. Green, Jr., Leavenworth, Kan., for debtors.

William E. Pray, Leavenworth, Kan., for creditor, First National.

Joseph H. McDowell, Kansas City, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on March 16, 1981, upon First National Bank &

Trust Company of Leavenworth's objection to confirmation of the debtor's plan. The Court heard additional evidence on August 17, 1981, at a rehearing.

### FINDINGS OF FACT

A number of facts are in dispute, particularly the valuation of certain items of secured collateral. The Court, after hearing arguments of counsel and testimony of witnesses, and after examining the pleadings and exhibits filed herein, finds as follows:

1. That the Court has jurisdiction over the parties and subject matter.

2. That on November 12, 1980, the debtors filed a Chapter 13 petition for debtors engaged in business; and that the debtors are engaged in business as Deli's, Inc.

3. That debtors proposed the following plan:

| CLASS | TREATMENT | CREDITOR | CLAIM |
| --- | --- | --- | --- |
| I—secured by pledged stock | Paid first through plan; and 100% | Manufacturer's State Bank | $2,800.33 (Debtors' guaranteed loan for Deli's, Inc.) |
| II—secured by business personalty | outside plan | Leavenworth National Bank | $1,233.43 (Debtors have primary liability) |
| | | Manufacturer's State Bank | $4,956.48 (Debtors guaranteed loan for Deli's, Inc.) |
| | | Manufacturer's State Bank | $1,557.15 (Debtors have primary liability) |
| | | Manufacturer's State Bank | $7,253.06 (Debtors' guaranteed loan for Deli's, Inc.) |
| | | Manufacturer's State Bank | $2,154.05 (Debtors have primary liability) |
| III—secured by debtors' personalty | outside plan | Leavenworth Teacher's Credit Union | $3,965.00 (Debtors have primary liability) |
| IV—unsecured | 10% paid through plan after Class I. | First National Bank & Trust Co. of Leavenworth | $23,137.57 (Debtors have primary liability) |
| V—secured by debtors' homestead realty | outside plan | Leavenworth Mutual Savings & Loan | $31,823.96 (Debtors have primary liability). |

4. That the debtors estimate that they have a net monthly income of $1,939.14 ($999.24 from Mrs. Roe's salary; and $907.24 from Mr. Roe's regular income from the operation of Deli's, Inc.; and other monthly income of $32.66), and monthly expenses of $1,781.66. They propose to pay $150.00 per month to the trustee, which leaves them with a $7.48 monthly budget surplus. The plan is estimated to payout in 37 months.

5. That the objecting creditor, First National, has an unsecured claim of $23,137.57 that arose out of a judgment in Leaven-

worth County District Court Case No. 79C834.

6. That the liquidation value of the items of secured collateral is as follows:

a) The stock in Duckwalls and Shoprite that is pledged to Manufacturer's State Bank (claim $2,800.33) is valued at $9,750.00 as per parties' stipulation;

b) The Snow White Laundry equipment that secured a loan by Leavenworth National Bank (claim $1,233.43) is valued at $0 because the equipment was sold along with the business in May of 1980. The sale is of no significance, however, because Leavenworth National Bank's claim of $1,233.43 has been fully paid by the debtors since the filing of the petition;

c) The 1981 Mazda that secured a loan by Manufacturer's State Bank (claim $4,956.48) is valued at $4,500.00 as per parties' stipulation;

d) The equipment, inventory, and stock in Deli's, Inc. that secured 3 loans by Manufacturer's State Bank (claims $1,557.15, $7,253.06, and $2,154.05) is valued at $8,266.96. This figure includes the value of inventory at $3,080.96 (*Pl. Exs. D & E*) and the value of equipment at $5,186.00 (*Def. Ex. # 1*). No value is placed on the Deli's, Inc. stock since there is no market for the stock and since the value of the going concern of such a new business is uncertain;

e) The 1976 Arrowglass Boat (17'4") and 1976 Rolco Boat Trailer that secured Leavenworth Teacher's Credit Union (claim $3,965.00) are valued at $4,000.00. This value is based on the new price of boat ($5,915.00); the actual price debtors paid for the used boat in 1979 ($4,900.00) and an allowance for depreciation since 1979. The Court specifically rejects plaintiff's notion that the Blue Book value is the proper value, as that value represents trade-in, not liquidation value;

f) The debtors' homestead is valued at $65,000.00 (debtors' asset schedules).

7. That the debtors' nonexempt assets are: their Duckwall and Shoprite stock; the 1981 Mazda; the equipment, inventory and stock of Deli's, Inc.; and the boat and trailer.

## ISSUES

I. WHETHER THE DEBTORS' PLAN FAILS TO SATISFY § 1325(a)(4).

II. WHETHER THE DEBTORS' PLAN FAILS TO SATISFY § 1325(a)(3).

III. WHETHER THE DEBTORS' PLAN FAILS TO SATISFY § 1325(a)(1) BECAUSE IT VIOLATES § 1322(a)(3) OR § 1322(b)(1).

IV. WHETHER THE DEBTORS' PLAN FAILS TO SATISFY § 1325(a)(6).

## CONCLUSIONS OF LAW

### I.

First National objects to confirmation on the basis that the Plan does not comply with 11 U.S.C. § 1325(a)(4). That section states:

*"(a) The court shall confirm a plan if —*

\*　　\*　　\*　　\*　　\*　　\*

*(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date ;"*

Section 1325(a)(4) is commonly called the "best interests of creditors" test. Under the old Bankruptcy Act, holders of allowed unsecured claims could accept or reject a wage earner plan. Under the Bankruptcy Code, however, the plan can be confirmed without the unsecured creditor's acceptance. In fact, unsecured creditors do not vote on the plan. To protect their interests, however, a condition precedent to confirmation is that the plan be in the best interests of all holders of allowed unsecured claims. The Court determines such by mak-

ing informed independent findings. The court need not launch an independent investigation. 5 *Collier on Bankruptcy* § 1325.-01(2)(D)(a) (15th ed.)

The drafters of § 1325(a)(4) left room for judicial construction. The phrases "value", "effective date of the plan" and "amount that would be paid if the estate of the debtor were liquidated under chapter 7" are not defined or explained in the statute or legislative history. A review of the reported cases, however, sheds light on the meaning of these phrases.

In *In re Klein*, 10 B.R. 657, 4 C.B.C.2d 412, 7 B.C.D. 668 (Bkrtcy.E.D.N.Y.1981), the Court held that "value" of the property to be distributed under the plan is construed as the value that a creditor would receive if the creditor disposed of the property in a customary or commercially reasonable way.

■ The operative time to determine value, that is the "effective date of the plan" is construed as:

(1) at or about the time of the confirmation hearing. See *In re Keckler*, 3 B.R. 155, 1 C.B.C.2d 574, 6 B.C.D. 14 (Bkrtcy.N.D. Ohio 1980); or

(2) the date the confirmation order becomes final. See 5 *Collier on Bankruptcy* § 1325.01(2)(D)(b)(i) (15th ed.); *Klee, "All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code"*, 53 Am.Bankr.L.J. 137 n.24 (1979); or

(3) the date of the valuation hearing. See *In re Klein, supra.*

■ This matter came on for confirmation on March 16, 1981, and was then taken under advisement. On August 17, 1981, an evidentiary hearing was held on fact issues, including the valuation of certain assets of the debtor. This Court finds that given the lapse of time between the confirmation and valuation hearings, the appropriate time to determine value is as of August 17, 1981.

Under the debtors' proposed plan, First National Bank of Leavenworth is to receive 10% of its allowed unsecured claim of $23,-137.57, or $2,313.75. That amount must be not less than the amount that would be paid

if the estate were liquidated under Chapter 7.

■ In a Chapter 7 liquidation the following non-exempt assets would be available for distribution:

| | |
|---|---|
| Boat and trailer | $4,000.00 |
| 1981 Mazda | 4,500.00 |
| Duckwall & Shoprite stock | 9,750.00 |
| Deli's, Inc. assets | 8,266.96 |
| | $26,516.96 |

That figure must be offset by the secured claims against such assets that would be enforceable in a chapter 7 proceeding:

| | |
|---|---|
| Boat and trailer | $3,965.00 |
| 1981 Mazda | 4,956.48 |
| Duckwall & Shoprite stock | 2,800.33 |
| Deli's, Inc. assets | 1,557.15 |
| Deli's, Inc. assets | 7,253.06 |
| Deli's, Inc. assets | 2,154.05 |
| | $22,686.07 |

The balance of $3,830.89 must be offset by any amount that would be paid to an unsecured creditor with priority; but there are no such creditors here. The balance must be offset by allowable Chapter 7 administrative expenses, as well. Even allowing a liberal $1,500.00 for chapter 7 administrative expenses leaves more than $2,313.75 for distribution to First National. Thus, this Court is convinced that First National will receive more through the debtors' plan than it would receive in a Chapter 7 liquidation. The plan complies with § 1325(a)(4).

## II.

First National objects to confirmation on the basis that the Plan does not comply with 11 U.S.C. § 1325(a)(3) which states as follows:

*"(a) The court shall confirm a plan if—*

 \* \* \* \* \* \*

*(3) the plan has been proposed in good faith and not by any means forbidden by law;"*

First National contends that the overall effect of the Plan makes evident that it was not proposed in good faith. First National is the only creditor whose claim is compromised at 10%. The other creditor in the plan is paid 100%; and the rest of the creditors, who are paid outside of the plan,

are paid 100%, too. Furthermore, the bulk of the claims are paid outside of the plan. The plan includes First National's $23,-137.57 claim and a $2,800.33 claim of Manufacturer's State Bank. Over $50,000.00 in claims are paid outside of the plan.

■ First National is the only unsecured creditor listed. All other creditors, whether paid through the plan or not, are secured. Thus, the fact that First National is the only creditor whose claim is compromised is not of itself evidence of a lack of good faith. Chapter 13 debtors need not treat secured and unsecured creditors equally.

Since the enactment of the Bankruptcy Reform Act of 1978, bankruptcy courts have defined "good faith" in widely divergent ways. Some courts do not require a debtor's best effort or a minimum percentage of compromise to find good faith. See *In re McMinn*, 4 B.R. 150, 1 C.B.C.2d 1007, 6 B.C.D. 197 (Bkrtcy.D.Kan.1980); *In re Sadler*, 3 B.R. 536, 1 C.B.C.2d 935 (Bkrtcy.E.D. Ark.1980).

Other courts require a debtor's best effort or meaningful payments to find good faith. See *In re Iacovini*, 2 B.R. 256, 1 C.B.C.2d 331, 5 B.C.D. 1270 (Bkrtcy.D. Utah 1980); *In re Campbell*, 3 B.R. 57, 1 C.B.C.2d 653, 5 B.C.D. 1365, (Bkrtcy.S.D.Cal.1980); *In re Hurd*, 4 B.R. 551, 2 C.B.C.2d 190, 6 B.C.D. 412 (Bkrtcy.W.D.Mich.1980).

■ This Court prefers to determine good faith by a subjective test, examining all the circumstances and the debtors' financial condition. *In re Bixby*, 10 B.R. 456, 4 C.B.C.2d 485 (Bkrtcy.D.Kan.1981). In the instant case, the debtors propose a 10% plan, paying $150.00 a month for 37 months. They estimate that they have a monthly income of $1,939.14; and they have reasonably estimated monthly expenses of $1,781.66. With the $150.00 plan payment, they are left with a $7.48 budget surplus each month. In light of these facts, this Court finds that the debtors proposed this plan in good faith. Therefore, § 1325(a)(3) has been complied with.

III.

First National objects to confirmation on the basis that the plan does not comply with § 1325(a)(1), because it does not comply with § 1322(a)(3) and § 1322(b)(1). Those sections state:

"*§ 1325. Confirmation of plan.*

*(a) The court shall confirm a plan if—*

*(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;*"

"*§ 1322. Contents of plan.*

*(a) The plan shall—*

\*   \*   \*   \*   \*   \*

*(3) if the plan classifies claims, provide for the same treatment for each claim within a particular class.*

\*   \*   \*   \*   \*   \*

*(b) Subject to subsections (a) and (c) of this section, the plan may—*

*(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;*"

First National contends that § 1322(a)(3) is violated because there is unequal treatment of it and other unsecured creditors. First National alleges that there are unlisted unsecured creditors arising from accounts payable of the debtors' business, Deli's, Inc. First National also alleges that Leavenworth Teacher's Credit Union's $3,965.00 claim is partially unsecured because the value of the security (the boat and trailer) is less than $3,965.00.

■ This Court has determined that the liquidation value of the boat and trailer is $4,000.00. Thus, the Leavenworth Teacher's Credit Union is oversecured. Furthermore, any holders of accounts payable of Deli's, Inc. are creditors of Deli's, Inc., not the debtors. The debtors filed a personal, not corporate, bankruptcy. Therefore, there is only one unsecured creditor, First National; and there is only one creditor within Class IV of the plan, First National. Thus, there is equal treatment of Class IV

creditors, since there is only one Class IV creditor. Section 1322(a)(3) has been complied with.

■ First National also contends that § 1322(b)(1) is violated because the plan designates classes of secured claims that are not specifically allowable. Section 1322(b)(1) deals with the classification of unsecured, not secured claims. Therefore, it is irrelevant that there are three classes of secured creditors paid outside of the plan and one class of secured creditors paid through the plan. The plan does not violate § 1322(b)(1) or § 1322(a)(3). Therefore, § 1325(a)(1) has been complied with.

### IV.

First National objects to confirmation on the basis that the plan does not comply with § 1325(a)(6). That section states:

"*(a) The court shall confirm a plan if—*

\*    \*    \*    \*    \*    \*

*(6) the debtor will be able to make all payments under the plan and to comply with the plan.*"

First National contends that the plan is not feasible for two reasons: the monthly income is overstated; and the monthly expenses are understated.

■ Debtors estimate that their net monthly income is $1,939.14 ($999.24 from Mrs. Roe's salary; $907.24 from Mr. Roe's operation of Deli's, Inc.; and $32.66 from other monthly income). First National alleges that Mr. Roe's take home pay is much less than $907.24 since: (1) at the § 341 hearing Mr. Roe testified that his gross income was less than $300.00 a week; and (2) that the debtors' schedules indicate Mr. Roe's gross annual income in 1979 was $11,049.00 (or about $212.00 gross per week). At the August 17, 1981 hearing, Mr. Roe testified that Deli's, Inc. has started carrying new product lines; that building improvements have been made on the Deli's, Inc. premises; and that the rent for those premises has increased from $460.00 to $730.00 a month. In light of these facts, this Court finds that Mr. Roe's estimate of his monthly income from Deli's, Inc. is overstated.

Debtors estimate their monthly expenses are $1,781.66. It appears that the debtors' itemized expense estimates are reasonable. They have liberal allowances for food, clothing, utilities, transportation, and the like. They include their monthly mortgage payment of $389.42.

First National points out one glaring problem with the debtors' expense estimates, however. The debtors propose to pay six[1] claims outside of the plan at the monthly contract rates. With the exception of the home mortgage, the debtors do not provide for these expenses in their expense estimate. The five claims not allowed for are as follows:

| Creditor | Balance Due | Monthly Payment |
|---|---|---|
| *Manufacturer's State Bank* | *$4,956.48* | *$137.68* |
| *Manufacturer's State Bank* | *1,557.15* | *Footnote #2* |
| *Manufacturer's State Bank* | *7,253.06* | *381.74* |
| *Manufacturer's State Bank* | *2,154.05* | *251.32* |
| *Leavenworth Teacher's Credit Union* | *3,965.00* | *100.00* |
| | | *$870.74* |

The debtors respond that most of these are obligations of Deli's, Inc., and that the debtors listed these obligations on the petition only because they personally guaran-

---

**1.** Actually, the debtors proposed to pay seven claims outside of the plan. However, the 7th claim, that of Leavenworth National Bank for $1,233.43, has been paid in full.

**2.** This is a demand note which matured on January 22, 1981, but which has apparently been extended for several 90-day extensions.

teed the notes for Deli's, Inc. An examination of the notes filed with the proofs of claims reveals that the debtors are primarily liable for three of the notes:

| Creditor | Balance Due | Monthly Payment |
|---|---|---|
| Manufacturer's State Bank | $1,557.15 | See Footnote #2 |
| Manufacturer's State Bank | 2,154.05 | $251.32 |
| Leavenworth Teacher's Credit Union | 3,965.00 | $100.00 |
| | | $351.32 |

Even if Deli's, Inc. paid its obligations and even if the $1,557.15 demand note could be avoided longer than the 37-month duration of the plan, the debtors are primarily liable for $351.32 a month; and that sum is not included in their expense estimates. With a $7.48 budget surplus, there is no way the debtors can keep these obligations current. Eventually, the debtors will be unable to pay the trustee $150.00 a month or will be unable to meet their necessary living expenses. Therefore, this Court finds that the plan is not feasible, thus § 1325(a)(6) has not been complied with.

Since 11 U.S.C. § 1325(a) requires that all six elements be met before a court can confirm the plan, this Court must deny confirmation.

This Court further finds that the proposal to pay six or seven creditors outside the plan violates the spirit of the Code and defeats the purpose intended by Congress.

THIS MEMORANDUM CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.