**In re Benjamin BRAGER and Irma Brager, Debtors.**

**Benjamin BRAGER and Irma Brager, Plaintiffs,**

**v.**

**Herschel BLUM and Helene Blum and Johanna Farms, Inc. and Frankford Quaker Grocery Co., Defendants.**

**Bankruptcy No. 81–02612G.**

**Adv. No. 82–1105G.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 19, 1984.

Joseph S.U. Bodoff, Pincus, Verlin, Hahn, Reich & Goldstein, P.C., Philadelphia, Pa., for debtors/plaintiffs, Benjamin Brager and Irma Brager.

Jay G. Ochroch, Leonard P. Goldberger, Shelley V. Sodomsky, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendants, Herschel Blum and Helene Blum.

Barbara H. Sagar, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant, Johanna Farms, Inc.

Samuel M. Brodsky, Philadelphia, Pa., Interim Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

At issue in this case is whether the defendants' judgment lien on the debtors' real property is avoidable under 11 U.S.C. § 506 of the Bankruptcy Code ("the Code"). For the reasons stated herein we find that it is.

The facts of this case are as follows:[1] The debtors filed a petition for the repayment of their debts under chapter 13 of the Code on July 6, 1981, although the case was converted to chapter 7 on March 24, 1982. At that time they owned a parcel of realty in Philadelphia County, Pennsylvania, which had a fair market value of $60,000.00. The property was subject to the following encumbrances which are listed from highest priority to lowest: a mortgage held by the Philadelphia Savings Fund Society for $7,000.00; an $80,000.00 judgment lien held by American Bank and Trust Company of Pennsylvania ("American Bank"); and a judgment lien in favor of Herschel and Helene Blum ("the defendants") for $286,395.84.[2]

American Bank assigned its judgment lien to A–1 Discount Company ("A–1") in exchange for $75,000.00 on September 22, 1981, with the intent of also assigning to A–1 American Bank's priority position. We reluctantly outline the machinations behind this assignment, by initially noting that $35,000.00 of the $75,000.00 fund was advanced by an entity known as 43 East, Inc. ("43 East"), which is a corporation wholly owned by one Peter Cardamone, Jr. ("Cardamone"). The remaining $40,000.00 of the fund came from an individual identified in the record only as Cardamone's grandmother ("the grandmother"). Cardamone and A–1 executed a document on December 14, 1982, which purported to assign the lien from A–1 to Cardamone although at that time no consideration passed to support the transaction.

The debtors request that we avoid the defendants' lien under § 506.[3] Under that section a creditor's claim is divided into secured and unsecured components. The secured portion of such creditor's claim is limited by the value of his share of the estate's interest in such property and is also restricted by the value of superior encumbrances on the property. The unsecured portion consists of the remainder of the creditor's claim.

The first issue confronting us is to determine at which point in a bankruptcy proceeding a creditor's lien should be valued for purposes of avoidance under § 506(a) and (d). Section 506 provides no answer, but the section's legislative history indicates that the courts have wide discretion in choosing the standard of valuation while

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The property is subject to several other encumbrances which are inferior to those listed here, but they are not pertinent to our discussion.

3. In relevant part § 506 states as follows:

    § 506. Determination of secured status
    (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim

to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

    *    *    *    *    *    *

    (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
    (1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or
    (2) such claim was disallowed only under section 502(e) of this title.

making no reference to the time when that value should be fixed. The cases have reached different conclusions on this point with some holding that the value should be fixed as of the filing of the petition. *E.g., In Re Adams*, 2 B.R. 313 (Bkrtcy.M.D.Fla. 1980); *Chrysler Credit Corp. v. Van Nort*, 9 B.R. 218 (Bkrtcy.E.D.Mich.1981); *Fox v. Peck Iron and Metal Co., Inc.*, 25 B.R. 674, 693 (Bkrtcy.S.D.Cal.1982). Others hold that the relevant time is the commencement of a proceeding to fix the value under § 506(a), *e.g., Virginia National Bank v. Jones (In Re Jones)*, 5 B.R. 736, 739 (Bkrtcy.E.D.Va.1980), while some courts suggest that in a chapter 13 case value should be determined as of the effective date of the plan. *In Re Klein*, 10 B.R. 657, 660 (Bkrtcy.E.D.N.Y.1981).

Choosing among these three alternatives requires a consideration of several factors, the first of which is that a single item of property may be encumbered by several security interests. For the sake of consistency and logic the value of the property and the secured claims must be valued as of the same time. Using the approach in *Jones* would not necessarily produce consistent results since different secured claimants in a single item of property might each be involved in different proceedings under § 506(a) which need not have been commenced on the same dates. Under *Jones* the commencement of each proceeding would be the date at which the property would be revalued. Thus, the total value of the secured claims could be greater or less than the value of the property as of any particular time.

The approach in *Klein* is flawed due to an apparent misreading of 11 U.S.C. § 1325(a)(5)(B)(ii). *Klein* states that, "Pursuant to 11 U.S.C. Section 1325(a)(5)(B)(ii), the value of the collateral establishing the amount of the secured claim is to be determined as of the 'effective date of the plan'." 10 B.R. at 660. Section 1325(a)(5)(B)(ii) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of such claim."

Thus, § 1325(a)(5)(B)(ii) merely provides that the size of a secured claim should be adjusted by a discount factor, but the section *pre-supposes* that the value of the claim has already been fixed. The provision does not say when the allowed secured claim must be valued.

■ The only remaining alternative is the approach used in *Adams*, where the date of the filing of the petition is the time of valuing the secured claim under § 506. We find this alternative clearly supported by 11 U.S.C. § 502(b) which states the general rule that, when an objection to a claim is raised, as in the case at bench, "the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition. . . ."

In furtherance of our determination that the value of property is fixed as of the date of the filing of the petition for lien avoidance purposes under § 502(a) and (d), the debtor postulates a general rule that the relative priorities of parties under § 506(a) are likewise fixed as of the date of the filing of the petition. We cannot adopt this suggested rule since at least some postpetition events,—such as the execution of a subordination agreement between two secured parties which is allowable under § 510(a) of the Code,—may alter the priority between the parties. Consequently, we must examine the postpetition events to evaluate the defendants' contentions that the assignment of American Bank's lien was ineffective to convey American Bank's priority position.

The first theory urged by the defendants is that the assignee, A–1, lost its priority position because entities other than the assignee provided the consideration for the assignment. The defendants cite no pertinent rule or case for their position and we find that governing authority weighs against them. *E.g., Dollar Savings Fund & Trust Co. v. Bellevue Borough*, 230 Pa. 240, 242, 79 A. 496 (1911).

■ Secondly, the defendants challenge the validity of A–1's priority position over the defendants on the allegation that the

lien was held by one entity while the debt was held by another entity at the same time. On the closely related topic of the separation of a mortgage and underlying debt, the rule was well summarized over a hundred years ago as follows:

> As a mortgage is but an incident to the debt which it is intended to secure, the logical conclusion is, that a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it. The security cannot be separated from the debt and exist independently of it. This is the necessary legal conclusion and is recognized as the rule by a long course of judicial decisions ... for the legal maxim is, the incident shall pass by the grant of the principal, but not the principal by the grant of the incident.

*Merritt v. Bartholick*, 36 N.Y. 44 (1867); *Philips v. Bank of Lewistown*, 18 Pa. 394, 403 (1852). A transfer of only the underlying debt also effects as a matter of law the conveyance of the equitable right to the accompanying security interest, notwithstanding the absence of formal assignment or delivery of the interest. 3 *Powell on Real Property* § 455, at p. 696 (1981); 4 *American Law of Property* § 16.108, at pp. 255–57 (Casner ed. 1952); 5 *Tiffany, The Law of Real Property* § 1449, at pp. 423–27 (1939). The rule is applicable even if the assignee of the debt did not know of the existence of the security interest. *Cathcart's Appeal*, 13 Pa. 416, 421 (1850); *Powell*, supra, at § 455. Thus, any severance of the debt from the lien is of no effect on the priority of A–1's judgment lien.

■ Thirdly, the defendants assert that American Bank sold the debt without the requisite intent necessary to effect an assignment of the accompanying lien. As stated above, we found that the requisite intent was present. Alternatively, we find that intent is not necessary to assign a security interest when the parties have effectively assigned the underlying debt. *Powell; American Law of Property; Law of Real Property; Cathcart's Appeal, supra.* The defendant's fourth contention,

which has largely been rendered irrelevant by our conclusions on the previous three points, is that the assignment of the mortgage on December 14 was void for lack of consideration. This allegation is without merit since consideration is a doctrine of contract law while an assignment is not a contract but rather a completed act.

■ Accordingly, we find that the assignment of the lien from American Bank to A–1 has not changed its priority. We will enter an order avoiding the Blums' lien in its entirety.