908 F.2d 967
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re James Richard MILAM; Sandra S. Milam, Debtors.
James Richard MILAM and Sandra S. Milam, Plaintiffs-Appellants,
v.
PEOPLES BANK OF MULLENS, Defendant-Appellee.
 No. 89-2176.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 3, 1990.
Decided: June 25, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-88-19-5).
 Thomas G. Truman, Meadows, Crews & Truman, Beckley, W.Va., argued, for appellants.
 Ellen S. Cappellanti, Jackson & Kelly, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL and WIDENER, Circuit Judges, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 James R. and Sandra S. Milam appeal the district court's affirmance of the bankruptcy court's valuation of four commercial properties. We affirm the district court's disposition of the matter on the reasoning of the bankruptcy court and the district court.
 
 
 2
 On August 31, 1983, the Milams executed a note payable to Peoples Bank of Mullens in the amount of $175,000, which note was secured by four commercial properties, the Milams' house, and certain unimproved lots. The Milams subsequently filed a Chapter 13 plan dated March 5, 1985, in the United States Bankruptcy Court for the Southern District of West Virginia. Under the plan, the Milams proposed to turn over the commercial properties to the bank in satisfaction of the note.
 
 
 3
 On March 26, 1985, the bank objected to the plan because it surrendered only the commercial properties and not the Milams' house. In its objection, the bank valued the commercial properties at $135,000 and the house at $50,000. However, the bank attached to the objection an appraisal prepared by Theodore Bailey on February 18, 1985. The appraisal valued the commercial properties at $195,990 but stated that "[d]ue to prevailing economic conditions in this area a reduction of 15% to 20% may be necessary to sell this property." Joint App. at 16, 19, 22, 24.
 
 
 4
 On May 23, 1985, the bankruptcy court held a confirmation hearing on the plan. Counsel for the bank recognized the discrepancy between the figure on the face of the objection and the amount of the attached Bailey appraisal, and he sought to introduce a new appraisal. The bankruptcy court refused to admit the new appraisal because the Milams had not been provided a copy until just before the hearing. The court also denied the bank's motion for a continuance and stated that "the appraisal file is closed." Joint App. at 77. Refusing to confirm the plan, the court directed the parties to attempt to settle the matter.
 
 
 5
 The parties did not resolve the matter, and on June 16, 1986, the bankruptcy court ordered them to name a mutually acceptable appraiser or file an affidavit stating that they could not reach an agreement. The parties did not respond, and by order of August 4, 1986, the court appointed James Lilly to appraise the commercial properties. Lilly conducted his appraisal on August 20, 1986, and valued the properties at $123,000.
 
 
 6
 On September 14, 1987, the bankruptcy court conducted a valuation hearing on the commercial properties. Although the court indicated its intention to value the properties as of the date of the valuation hearing, the Milams insisted that the properties be valued as of the first confirmation hearing (May 23, 1985). Therefore, they introduced only the Bailey appraisal of February 18, 1985, in the amount of $195,990.
 
 
 7
 The bank introduced the Lilly appraisal of August 20, 1986, in the amount of $123,000. However, Lilly testified that the amount should be reduced by six percent in light of the decline in property values between the date of the appraisal and the valuation hearing. Accordingly, Lilly testified that the current value of the commercial properties was approximately $115,000.
 
 
 8
 By order of December 9, 1987, the bankruptcy court held that the properties would be valued as of the date of the valuation hearing (September 14, 1987), unless an unreasonable time elapsed between the valuation hearing and the final confirmation hearing. Relying on the Lilly appraisal of $123,000 less the six percent reduction for declining property values, the court valued the commercial properties at $115,620.
 
 
 9
 The Milams appealed the bankruptcy court's order to the United States District Court for the Southern District of West Virginia. By order of August 11, 1989, the district court affirmed the bankruptcy court's order. The district court noted the bankruptcy court's consideration of (1) the passage of time from the 1985 confirmation hearing to the 1987 valuation hearing, (2) the concern that valuation and confirmation occur proximate in time to one another, (3) the parties' failure to secure a mutually acceptable appraiser, as ordered by the bankruptcy court in 1986, and (4) the Milams' failure to hire an appraiser to dispute the Lilly appraisal. Recognizing that the valuation of real property is a factual matter subject to the clearly erroneous standard on appeal, the district court held that the bankruptcy court had not abused its discretion in considering the above-mentioned factors and in selecting the Lilly appraisal and the date of September 14, 1987, for valuation purposes. Accordingly, the district court affirmed the bankruptcy court's order of December 9, 1987. This appeal followed.
 
 
 10
 The Milams concede that a bankruptcy court may value a debtor's property as of the valuation hearing. See, e.g., In re Anderson, 88 B.R. 877 (Bankr.N.D.Ind.1988); In re Roe, 14 B.R. 649 (Bankr.D.Kan.1981); In re Klein, 10 B.R. 657 (Bankr.E.D.N.Y.1981). Determining the value of the property as of the date of the valuation hearing is appropriate because it takes into account changes in value during the course of administration, and confirmation generally follows shortly thereafter. In re Klein, 10 B.R. at 661.
 
 
 11
 While the Milams acknowledge that a bankruptcy court may value property as of the valuation hearing, they argue that the bankruptcy court in the case at bar should have used its equitable powers to value the commercial properties as of the date of the first confirmation hearing. This court disagrees. Although the bankruptcy court refused to confirm the Milams' Chapter 13 plan at the first confirmation hearing on May 23, 1985, the Milams took no action to move the case forward for approximately two years. Instead, they retained the house and the commercial properties, failed to comply with the bankruptcy court's order to name a mutually acceptable appraiser or file an affidavit stating that they could not reach an agreement with the bank, and filed a motion for valuation of the commercial properties only after the bank requested that the automatic stay on the various properties be lifted.
 
 
 12
 In light of the passage of two years between the first confirmation hearing and the valuation hearing, and the Milams' failure to act to move their case forward during this period, the bankruptcy court did not abuse its discretion in determining the value of the properties as of the valuation hearing. Accordingly, the district court's affirmance of the bankruptcy court's choice of valuation date was proper.
 
 
 13
 The only evidence of the value of the commercial properties at the time of the valuation hearing was Lilly's 1986 appraisal in the amount of $123,000 and his testimony that this amount should be reduced by six percent in order to reflect the decline in property values between the appraisal date and the valuation hearing. The parties stipulated that Lilly was "an expert in the market of real estate appraisal," Joint App. at 178, and he testified that he had previously appraised commercial property in the geographic area of the Milams' properties and that he was familiar with the local economy. Joint App. at 173, 187. Therefore, the bankruptcy court's valuation of the commercial properties in the amount of $115,620 pursuant to Lilly's appraisal and testimony was not clearly erroneous, and the district court did not err in affirming the bankruptcy court in this regard.
 
 
 14
 Alternatively, the Milams argue that the bank's attachment of the Bailey appraisal to the 1985 objection constituted an admission by the bank regarding the value of the commercial properties. Again, this court disagrees. The objection stated that the commercial property "is appraised at $135,000, said appraisals being attached," and it again referred to the value as $135,000 in the following paragraph. Joint App. at 6. However, the Bailey appraisal valued the commercial properties at $195,990. The appraisal also noted that "[d]ue to prevailing economic conditions in this area a reduction of 15% to 20% may be necessary to sell this property." Joint App. at 16, 19, 22, 24.*
 
 
 15
 The bank's reference to the appraised value of the commercial properties as $135,000 clearly contradicts the Bailey appraisal, which valued the properties at $195,990. Moreover, the appraisal was itself ambiguous in that it provided that it might be necessary to reduce the value by an additional fifteen to twenty percent in order to sell the properties. Given the contradiction between the objection and the appraisal, as well as the ambiguity of the appraisal, the bank's attachment of the appraisal to the objection did not constitute an admission regarding the value of the commercial properties, as finally concluded by the bankruptcy court. Joint App. at 151-54.
 
 
 16
 For the foregoing reasons, the judgment below is
 
 
 17
 AFFIRMED.
 
 
 
 *
 Even if the Milams received the benefit of the Bailey appraisal at the time it was made, given the caveat of the reduction in value of fifteen to twenty percent on the commercial properties, they would still have had to sell their home in order to cover the principal amount due on the note. A fifteen to twenty percent reduction of the $195,990 appraisal yields a value between $156,792 and $166,591.50 for the commercial properties. The parties stipulated that the value of the unimproved lots was $2000. Joint App. at 178-79, 226. When the lot value is added to the reduced value of the commercial properties, this sum is insufficient to satisfy the $175,000 face amount of the note, without any consideration of accumulated interest